MAYBIN (BOURNE v.).   See Case No. 1,700.

---

## Case No. 9,338.

### MAYBIN v. RAYMOND.

### RAYMOND v. HARRIS et al.

[15 N. B. R. 353;[1] 4 Am. Law T. Rep. (N. S.) 21.]

Circuit Court, S. D. Mississippi. 1877.

BANKRUPTCY—CLAIM OF BANKRUPT—EMPLOYMENT OF COUNSEL—SUBSTITUTION OF ASSIGNEE—OTHER COUNSEL EMPLOYED—CONSENT OF COURT.

1. Where counsel, employed by the bankrupt before the commencement of the proceedings in bankruptcy to carry on a suit at their own cost and retain as compensation one-half of the amount recovered, recover a large fund in such suit after the bankrupt is discharged, they are entitled to the one-half of such recovery, notwithstanding such bankruptcy and discharge.

2. A petition filed by the bankrupt after his discharge, praying that the share of the counsel be

[1] [Reprinted from 15 N. B. R. 353, by permission.]

paid to them, and the balance, after paying debts and costs of the bankruptcy, be paid to him, is one in the ordinary course of a bankrupt proceeding and not a bill in equity, nor is a decree of the bankrupt court directing such payment the allowance of a claim against the bankrupt's estate. The proper method of reviewing such a decree is by petition.

3. The discharge of a bankrupt does not bar the right of his assignee to recover property afterwards discovered, which the bankrupt had failed to put in his schedules.

4. Where it appears that the discharge of the assignee has inadvertently found its way among the files of the court, the court has power to set it aside and direct the assignee to proceed with his duties.

5. Where the assignee was substituted as plaintiff, more than two years after his appointment, in a suit which was commenced in the name of the bankrupt, and recovers therein, the bankrupt cannot claim the amount of such recovery from him on the ground that the limitation provided in the bankrupt law [of 1867 (14 Stat. 517)] barred his remedy at the time of his substitution.

6. Where the assignee, in obtaining authority from the court to make a contract with counsel to prosecute a claim and to pay them for their services one-half the gross amount when recovered, suppresses facts which if known to the court would have induced it to withhold such authority, the contract is not binding on the court or the parties, especially where such facts were known to the attorneys themselves. But a reasonable sum for services actually performed will be allowed.

[In review of the action of the district court of the United States for the Southern district of Mississippi.]

On the 3d of June, 1876, the district court of the United States for the Southern district of Mississippi, sitting in bankruptcy, made a decree, to revise certain portions of which these petitions were filed. This decree was made under the following circumstances: Raymond, the assignee of Maybin, had recovered in the court of claims a judgment against the United States for seventy-one thousand and twenty dollars, which sum had been drawn from the treasury of the United States, and at the date of the decree of the district court was in the registry of the court subject to distribution by its order. In anticipation of this state of facts, Maybin, the bankrupt, had filed, on January 26, 1876, a petition in the district court, in which he set forth that Messrs. Harris & Harris, a firm of solicitors in Vicksburg, were entitled to one-half the amount so recovered from the United States, by reason of a contract entered into in 1866 with them by him before his bankruptcy, by which he agreed that, in consideration of their prosecuting said claim and paying all expenses incident to such prosecution, they were to have and retain one-half the amount they might recover from the United States. That Harris & Harris had associated with themselves in the contract Messrs. Bartley & Casey, solicitors in Washington city, and that by the united services of all his said counsel on May 25th, 1875, a judgment was recovered in favor of petitioner and against the United States, in the court of claims, for seventy-one thousand and twenty dollars. His petition further states that in July, 1873, and more than three years after the discharge of the petitioner in the bankrupt court, John B. Raymond, his assignee, had procured himself to be substituted for the petitioner as plaintiff in the said suit in the court of claims; that but one debt had been proved against the estate of the petitioner, and that for the sum of two thousand dollars only; and that said assignee intended to collect said judgment and hold said money, and refused to recognize the compensation due to the said counsel of petitioner. The petition prayed that the counsel of petitioner should be paid their said fees out of the fund when recovered, and that petitioner should be allowed to deposit in the registry of the court a sufficient sum to cover all claims against him and all costs and commissions of the assignee, and that the remainder of the proceeds of said judgment should be paid to petitioner. After the filing of this petition and before a decree was made thereon, the judgment of the court of claims had been affirmed by the supreme court of the United States, and the amount of the judgment was drawn from the treasury of the United States and was in the custody of the bankrupt court. Before the decree was made upon said petition, other proofs of debt had been filed against the estate of said Maybin, in addition to said claim of two thousand dollars, so that the debts filed against the said estate amounted to about twenty-six thousand dollars. These debts, however, it was claimed by Maybin, were not valid claims against his estate. Raymond, the assignee of Maybin, filed an answer to this petition in which, besides denying many of the averments of the petition, he alleged that Maybin had fraudulently neglected to place the said claim against the United States upon his bankrupt schedules. That in March, 1873, he discovered that the said Maybin was then prosecuting said claim in the court of claims, and thereupon he, the assignee, filed his petition in the district court setting forth that said claim had come to his knowledge, that it would be necessary to employ an attorney to prosecute the same, that he had no funds for that purpose, and that it had been customary for such claimants to employ an attorney at a compensation of one-half the amount recovered, and praying for authority to make a contract with an attorney for the collection of said claim on those terms; that the authority was given, and he made a contract with Messrs. Adam & Speed, attorneys, dated March 22d, 1873, by which he employed them to prosecute said claim, and agreed to pay them for their services one-half the gross proceeds of said claim when recovered. Adam & Speed, who had associated with themselves in the prosecution of this suit Mr. S. E. Jenner, of Washington city, filed on October 2, 1875, a proof of their

claim against the bankrupt's estate, in which they claimed that there was due them and said Jenner, from the bankrupt's estate, the sum of thirty-five thousand five hundred and ten dollars, by reason of their services under the contract aforesaid, and that they held an attorney's lien upon the judgment for seventy-one thousand and twenty dollars, which had been recovered in May, 1875, in the court of claims, in favor of said assignee. After due notice to all the parties in interest, and the taking of much testimony on both sides, the petition of Maybin came on for hearing before the district judge sitting in bankruptcy, on the 3d of June, 1876, and he made a decree. [Case unreported.] The decree found that there was on deposit in the Valley Bank of Vicksburg, the proceeds of said suit in the court of claims, the sum of seventy-one thousand and twenty dollars, subject to the order of the court in the cause, and directed its distribution as follows: To Raymond, the assignee, for his commissions on receiving and paying over said moneys, the sum of eight hundred and ten dollars; to S. E. Jenner, or Adam & Speed, his associates, five hundred and seventy-nine dollars and forty-six cents, being an amount paid by Jenner to Bartley & Casey, the attorneys for Maybin, and which sum was properly chargeable to the attorneys of said Maybin; to Harris & Harris, and Bartley & Casey, their associates, thirty-four thousand five hundred and twenty-six dollars and fifty-four cents; to Adam & Speed and S. E. Jenner, seventeen thousand five hundred and fifty-two dollars and fifty cents; and the court decreed that the remainder of the fund be held by the said Valley Bank until the further order of the court. Maybin, the bankrupt, has filed a petition to review this decree, in which his main ground of complaint is the allowance made to Adam & Speed and Jenner. And Raymond, the assignee, has also filed a petition of review in which he complains of so much of the decree as allows to Harris & Harris and Bartley & Casey the said sum of thirty-four thousand five hundred and twenty-six dollars and fifty-four cents. The other facts necessary to an understanding of the controversy are stated in the opinion of the court.

W. B. Pittman, A. B. Pittman, T. W. Bartley, and Joseph Casey, for Harris & Harris and Bartley & Casey.

W. B. Pittman, for Maybin.

G. Gordon Adam and Dickey, for Adam & Speed and Jenner, and for Raymond, assignee.

WOODS, Circuit Judge. The respondents to the supervisory petition of review filed by Raymond, the assignee, have entered a motion which raises a preliminary question that first requires the attention of the court. The motion is to dismiss the petition because this court is without jurisdiction to entertain the same, the decree sought to be reviewed being either a decree in equity or the allowance of the claim of creditors, and therefore not reviewable by supervisory petition. I do not think this motion ought to prevail. The petition of Maybin was in the ordinary course of a bankrupt proceeding. Its main purpose was to secure to himself any surplus that might remain of his estate after paying all the claims upon the fund, and all debts due from him. It certainly was not necessary to present such a prayer by a regular bill in equity. The fund, at the time of the decree, was in the registry of the court, and Maybin's petition amounted simply to a motion to distribute the fund to those having claims against it and to pay him the residue. Nor does the decree appear to be the allowance of a claim in favor of Harris & Harris and Bartley & Casey. They were the owners by equitable assignment of one-half the fund, if what they alleged about their contract with Maybin was true. They did not set up a debt due to them against the bankrupt estate, but a title to one-half the fund. The decree that they be paid out of the fund was not the allowance of a claim against the estate from which, by the provisions of original section 8 of the bankrupt act (Rev. St. 4980), an appeal might be taken. "The assignee of a bankrupt is not the assignee of his creditor, nor of all the judgments, executions, liens, and mortgages outstanding against his property. He takes only the bankrupt's interest in the property; he has no right or title to the interest which others have therein, nor any control over it further than is expressly given by the bankrupt act as auxiliary to the preservation of the bankrupt's interest for the benefit of his general creditors." Goddard v. Weaver [Case No. 5,495].

In the district court the petition of Maybin was treated both by the parties and the court as an informal petition in the course of bankrupt proceedings; and I am disposed to treat it in the same way in this court, and think it was not a bill in equity; nor was the decree of the court the allowance of a claim against the bankrupt's estate. The motion to dismiss the revisory petition of Raymond, the assignee, is therefore overruled.

As to the merits of the revisory petition of Raymond, the questions are, what contract did Harris & Harris make with Maybin for the prosecution of his claim against the United States, and what were their rights under that contract? In my judgment the proof is clear and conclusive that one or two years before Maybin filed his petition to be adjudicated a bankrupt, he entered into a written contract with Harris & Harris, by which the latter agreed to prosecute said claim against the United States, and pay all costs and expenses of said prosecution, and for their said services they were to have one-half the net proceeds of the claim, and the other half was to be paid to said Maybin; that Harris & Harris, by themselves and those whom they

associated with themselves, did prosecute said claim in the court of claims, and in the supreme court of the United States, and did recover therein final judgment for seventy-one thousand and twenty dollars, which amount is now in the registry of the district court.

Under this state of facts there can be no doubt of the right of Harris & Harris and their associates to one-half the net proceeds of the fund, notwithstanding the fact that, during the pendency of the cause in the court of claims, Maybin had been adjudicated a bankrupt, and before the recovery of the judgment in that court Raymond, his assignee, had been made a party plaintiff to the suit. Harris & Harris and their colleagues were not only willing to prosecute the suit after the bankruptcy and after the assignee was made party, but actually did prosecute it to a successful final judgment and recovery of the money. These services were accepted by the assignee, and he now enjoys their fruits. When their services had been rendered according to their contract, and the money recovered, they had a title to one-half the amount. When Raymond was appointed assignee the claim of Maybin vested in him, subject to the rights of Harris & Harris under their contract, which were in no way affected by the bankruptcy. As long as they were willing to perform their part of the contract, they were entitled to insist upon their rights under it. These rights of Harris & Harris and their associates were recognized not only by the district court, but also by the court of claims. The district court, in an order dated November 28, 1873, directed Raymond, as assignee, to prosecute said claim in the court of claims, and declared that all costs and expenses incurred by said bankrupt, including his counsel fees for the prosecution of said claim before the substitution of said assignee, should be paid out of the amount which might be paid into court to be thereafter determined by the court. And in the order of the court of claims, made on February 23, 1874, by which S. E. Jenner was made attorney of record for said Raymond as assignee of Maybin, instead of Bartley & Casey, it was provided that Bartley & Casey should have and retain a lien upon the cause of action, and upon the papers and effects of the said Maybin, and upon any judgment which might be recovered in the case, to the amount of such contingent fees and costs as it was agreed by or on behalf of said Maybin that his original attorney should receive for professional services for prosecuting the case. The order of the district court authorizes the assignee to prosecute the claim in the court of claims, and the order of the court of claims substituting the attorney of the assignee as attorney of record, both took care to preserve the rights of Maybin's attorneys under their original contract for fees. It is objected that the contract made between Maybin and Harris & Harris is champertous, and therefore void. "Champerty," says

Blackstone, "is a species of maintenance, being a bargain with the plaintiff or defendant campum partire if they prevail at law; whereupon the champertor is to carry on the party's suit at his own expense." The common-law notions of champerty and maintenance have never fully obtained in this country, because the reason upon which they were founded in England did not exist here.

In the case of Slywright v. Pages, 1 Leon. 167, it was said by the whole court of common pleas that the meaning of the statute of 32 Hen. VIII., concerning maintenance, was "to repress the practices of many who, when they thought they had title or right to any land, for the furtherance of their pretended right conveyed their interest in some part thereof to great persons, and with their countenance did oppress the possessors." Blackstone speaks of the offense of champerty as "perverting the process of law into an engine of oppression." The same reasons were given for the rule of the common law that a chose in action could not be assigned. "Nothing," says Coke, "in action, entry, and re-entry can be granted over, for or under color thereof pretended titles might be granted to great men whereby right might be trodden down and the weak oppressed." Co. Litt. 14a. It has been well remarked that feeble, partial, and corrupt must have been the administration of justice when such a reason could have force. Thallhimer v. Brinckerhoff, 3 Cow. 643. The rule that a chose in action cannot be assigned has long since been exploded, because the reason upon which it rested has ceased to exist. And the ideas of the guilt of champerty and maintenance have measurably disappeared, and generally it is not now considered in this country a crime to aid the lawful suit of another with money and services, in consideration of a share in the recovery. Thallhimer v. Brinckerhoff, supra; Lytle v. State, 17 Ark. 608; Bayard v. McLane, 3 Har. (Del.) 139.

Where the government is defendant, the grounds upon which the offense of champerty were supposed to rest cannot, in the nature of the case, exist. In such cases as the one under consideration, the government invites the suits of her citizens having lawful claims, and is in no danger of suffering injustice, no matter how great and influential those are who are aiding in their prosecution. The objection that the contract under consideration is champertous cannot therefore prevail. It seems to me clear that the district court, in making the decree now under review, did right in directing the payment of the compensation of Harris & Harris and Bartley & Casey out of the fund. Maybin, when competent to contract, had agreed to pay them this compensation, and they had, without objection by the assignee, rendered the services and accomplished the object for which the allowance was made. Therefore, unless some obstacle appears in the consideration of other questions raised in the case, that part of the

decree of the district court under consideration ought to be affirmed, and the petition of review filed by Raymond dismissed.

The questions referred to are made by the counsel for Maybin upon his petition to review so much of the decree of the district court as allowed Adam & Speed and Jenner the sum of seventeen thousand five hundred and fifty-two dollars. The objections upon which the counsel for Maybin rely reach to the entire decree of the district court. They assert that the district court had no jurisdiction to make the decree. They claim this on several grounds: First. Because the proceeding in bankruptcy was completed and concluded before Raymond was authorized to prosecute the claim in the court of claims, and that the court had therefore no authority to make that order or any subsequent order in the bankruptcy. This view is based on the alleged fact that the bankrupt Maybin, having been discharged about the 25th of January, 1870, Raymond, his assignee, was subsequently, but soon after, also discharged, and that this ended and closed the bankruptcy proceedings, and all proceedings thereafter in said bankruptcy were without jurisdiction and void. If the facts as claimed were borne out by the record, I should feel inclined to hold on this point with the attorneys for Maybin. But as I read the record, Raymond never was discharged as assignee. It is true a discharge written upon a printed blank, without date and signed by the register, is found among the files of the bankruptcy of Maybin, and doubtless this discharge was signed by the register soon after the date of the discharge of the bankrupt himself. But it appears farther from the record that on April 10, 1873, Raymond filed a petition in the district court, in which he represented that he was embarrassed, in the performance of his duty as assignee, by the said paper purporting to be his discharge as assignee; that said paper was signed without being applied for; that the date was purposely omitted, and that it was inadvertently put by the register among the papers in the cause, when they were returned into court.

Upon this petition the court acted, and found that said discharge was inadvertently made and filed in said cause, and ordered it to be annulled. The mere inadvertent filing of a discharge among the records of a cause does not paralyze a court and put an end to the case. A court at any time, on the truth being made to appear, would have the power to order such a paper to be stricken from the files. "A court has power at a subsequent term to set right mere forms in its judgments, to correct misprisions of its clerks, and to correct any mere clerical errors so as to conform the record to the truth." Bank v. Labitut [Case No. 842]. When, therefore, it was made to appear that the discharge of an assignee had inadvertently found its way among the files of the court, the court had power to order the paper to stand for

naught, and the assignee to proceed in the discharge of his duties; and this the court did. The assignee was, therefore, in fact never discharged.

Second. It is further claimed, that the discharge of the bankrupt on January 25, 1870, was an adjudication that he had surrendered all his property for the benefit of his creditors, and that the assignee had no right, although he might afterwards discover property of the bankrupt which the bankrupt had failed to put upon his schedules, to bring it into the bankruptcy without first setting aside the discharge of the bankrupt; that this had never been done, and that the time within which it could be done had elapsed. I do not think that the discharge of a bankrupt was intended to have the effect claimed. Generally, a bankrupt may apply for his discharge at any time after the expiration of six months, and if no debts have been proved and no assets have come to the hands of the assignee, he may apply after the expiration of sixty days from the adjudication. A discharge once granted can only be annulled on the ground of fraud. Rev. St. §§ 5110, 5120. So that if the theory under consideration is correct, where a bankrupt inadvertently omits property from his schedule and gets his discharge fairly, newly-discovered assets can never be reached by the assignee, because the discharge can never be set aside. An interpretation of the law which leads to such results must surely be unsound. The fact is, that the adjudication of bankruptcy vests in the assignee the title to all property of the bankrupt not exempt, whether the same is placed on the schedules or not; and, without reference to the discharge of the bankrupt, it is the duty of the assignee to collect the assets, and apply them to the payment of the debts, and the discharge of the bankrupt interposes no obstacle to the performance of this duty.

Third. It is claimed that if the assignee acquired any right to the claim of Maybin against the United States, he is barred of that right because he did not prosecute it within two years; that is to say, because he did not have himself substituted for Maybin as plaintiff in the suit pending in the court of claims until after the expiration of two years from his appointment as assignee. Rev. St. § 5057. If it be conceded that under the circumstances the assignee was barred, it seems clear that Maybin cannot now avail himself of that fact. The limitation is for the benefit of defendants in the actions prosecuted by the assignee. If the limitation of the statute was effectual to bar the assignee, the United States might have set up the bar. But that was not done; after the suit of the assignee has been allowed to progress to judgment, and the money has been collected by him, it seems to be too late for the bankrupt to intervene and set up the bar of the statute. I am of opinion, therefore, that none of the grounds relied on by counsel for Maybin, to

show that the district court had no jurisdiction to make the decree complained of, are well taken.

This brings up the merits of the revisory petition filed by Maybin. The petition claims that the allowance by the district court to Adam & Speed and Jenner of seventeen thousand five hundred and fifty-two dollars and fifty cents was not justified, and I think the objection to this allowance is sustained by the facts of the case. It is made perfectly clear by the record that the court, when it authorized Raymond, the assignee, to employ an attorney to prosecute the claim of the bankrupt against the United States, for the compensation of one-half the amount recovered, did so in ignorance of the facts of the case; and that this ignorance resulted from the suppression by the assignee of facts which must have been known to him, and the fact of such suppression was known to the attorneys with whom he subsequently contracted. It is not to be supposed that if the court had been advised that the claim of Maybin was already in course of prosecution in the court of claims, and almost ready for judgment, and that the attorneys prosecuting the claim had a contract with Maybin for one-half the amount to be recovered for their compensation, that under these circumstances the court would have authorized the employment of other counsel for the assignee, who was to receive the other half of the money for their services. The petition filed by the assignee for authority to employ counsel left the court in the dark as to the real state of the case; and the order of the court allowing the assignee to employ counsel who were to receive one-half the recovery for their services was not binding upon the court or the parties.

But aside from this, the services which Adam & Speed contracted to render, and for which they were to receive one-half the amount recovered by them, were never rendered. What were the services they agreed to perform? The petition of the assignee for authority to employ counsel represented that among the assets of the bankrupt there was a claim against the United States for cotton taken from bankrupt's plantation; that in the prosecution of said claim it would be necessary to employ counsel; that it was customary in such cases for the claimant to enter into contract with the attorney to pay him for his services in the collection of the same fifty per centum of the amount recovered, the claimant to be at no further expense in making said collection; and the petition prayed that the petitioner be authorized to employ counsel to prosecute the claim on the said terms, and the court authorized the contract to be made as prayed for in the petition. In pursuance of this authority the assignee, on the same day, the authority was given, entered into a contract in writing with Adam & Speed and Jenner, by which they agreed "to prosecute and recover a certain claim or debt due and owing to the estate of said bankrupt by and from the United States. for and on account of cotton taken from bankrupt's plantation during the Rebellion." And the assignee agreed to pay them one-half the amount recovered for their services.

From all this it appears that what Adam & Speed and Jenner were employed to do, and what they agreed to do, and for the doing of which they were to receive one-half the amount recovered. was to prosecute and recover the claim against the United States. This they did not do, nor did they assist in doing. The record shows that the suit against the United States was prosecuted solely by Harris & Harris and their associates, and it fails to show any service performed by Adam & Speed and Jenner, or either of them, toward the recovery of the judgment against the United States. Adam & Speed and Jenner did perform services for the assignee about the claim, but they were not the services contemplated by the order of the court or by the contract between the assignee and them. These services were the procuring the substitution of the assignee as plaintiff in the court of claims in place of the bankrupt, and having Jenner substituted as attorney of record for plaintiff in place of Bartley & Casey. Doubtless these services were valuable to the estate of the bankrupt. They prevented the fund when recovered from going into the hands of Maybin, the bankrupt, and secured the possession of it to Raymond, the assignee. But the prosecution of the claim and the recovery of the money from the United States, by the final judgment of the supreme court. was done by Harris & Harris and their associates, and not by Adam & Speed and Jenner. It never entered into the contemplation of the court that Adam & Speed and Jenner were to be paid fifty per cent. of the recovery for preventing the fund from going into the possession of the bankrupt, and that the other fifty per cent. was to be paid to the attorneys of the bankrupt for their services in recovering the fund as against the United States.

In my opinion Adam & Speed and Jenner cannot claim under said contract: (1) Because the authority to make it was conferred by the court without a knowledge of the facts which the assignee must have known, and was bound to communicate; and (2) because none of the services contemplated by the order of the court and the contract between Adam & Speed and Jenner were performed. The services actually rendered were not those for which the assignee was authorized by the court to pay fifty per cent. of the recovery. But nevertheless Adam & Speed and Jenner have performed a valuable service to the bankrupt's estate. and they should be paid for such services what they are reasonably worth.

The result of my views is, that the petition of review filed by John B. Raymond. assignee, must be dismissed at the costs of the

bankrupt estate, and that so much of the decree as directs the payment to Harris & Harris and Bartley & Casey of thirty-four thousand five hundred and twenty-five dollars and fifty-four cents must be affirmed. That so much of the revisory petition filed by J. W. Maybin as complains of the order directing the payment to Adam & Speed and Jenner of seventeen thousand five hundred and fifty-two dollars and fifty cents by said assignee be sustained, and so much of said decree as directs the payment to said attorneys of said sum be reversed; and that the district court be required to ascertain in such manner as shall seem to it most proper what sum of money is due to Adam & Speed and Jenner for their services in the premises, and to direct the payment to them of such sum out of the fund.

[For subsequent proceedings in this litigation, see Cases Nos. 9,337 and 1,700.]