BOWER & BOWER, for plaintiff in error.

VASON & DAVIS, for defendant.

---

MATHEW R. STANSELL, plaintiff in error, *vs.* JOHN LINDSAY *et al.*, defendants in error.

1. When an administrator was sued in ejectment, and contracted with an attorney to defend the suit, and agreed to give him one-half the land if the defense was successful, and the attorney so employed procured another attorney to represent him at the trial, and the defense proving successful, the administrator sold the land under an order of the Ordinary, had it bid off for himself and the substituted attorney, and then divided the land between himself and the substituted attorney, and the attorney first employed filed a bill against the administrator, and the substituted attorney, for a specific performance of the original agreement:

*Held,* That it was not error for the Chancellor to charge the jury that a bill for specific performance would lie in such a case against the administrator and the substituted attorney.

2. As this turns entirely on the credibility of the witnesses, the testimony being strikingly in conflict, the jury was the proper tribunal to decide between the parties, and there being no error of the Court in its charge, the verdict ought not to be disturbed.

New trial. Equity. Specific performance. Witness. Before Judge HALL. Newton Superior Court. March Term, 1873.

Mathew R. Stansell filed his bill against John Lindsay and John J. Floyd, making substantially the following case:

During the first of the year 1861, complainant was employed as an attorney at law, by the defendant, Lindsay, as administrator *de bonis non* upon the estate of George Bell, deceased, to file a bill in equity against one Robert J. Hender-

son, as administrator upon the estate of Cary Wood, deceased, for the recovery of lot of land number two hundred and nineteen, in the ninth district of originally Henry, now Newton county, and to enjoin an action of ejectment for said lot in favor of said Henderson, administrator, against said Lindsay, as administrator. Said defendant, Lindsay, contracted to convey to complainant one-half of said land for his professional service should he prove successful in said litigation; should he fail he was to have nothing. Complainant, in pursuance of said agreement, filed said bill, returnable to the September term, 1861, of Newton Superior Court, and attended to said cause whenever anything was to be done, until the March term, 1866, of said Court. About the first of the year 1862, complainant moved from the county of Newton to the county of Sumter, and finding it inconvenient to attend to his unfinished business at so great a distance, he employed James M. Pace, Esq., a competent attorney, to represent him. At the March term, 1866, of said Court complainant being himself present, and finding that the cause aforesaid would not be reached, requested the defendant, Floyd, an attorney at law, to represent complainant in connection with Mr. Pace, in the future management of said cause, to which request the said Floyd most readily assented, proposing at the same time to represent complainant in any other unfinished business he might have in the said county of Newton. Complainant expressed a perfect willingness that said Floyd should charge for his services, which he declined to do for the sufficient reason that complainant had, before that time, represented him in the county of Sumter, and had, at the request of said Floyd, charged him no fee. At the September term, 1866, of said Court, said cause was tried, complainant being represented by said Pace, and the defendant, Floyd, and resulted in a verdict in favor of the defendant, Lindsay, as administrator as aforesaid, and a decree in accordance with the prayer of the bill. About the time of said trial, or shortly thereafter, said Floyd procured possession of the contract made by said Lindsay with complainant for fees, from said Pace, under the express agree-

ment that it should be returned if complainant should object to his possession, yet, though notified of such objection he has persistently refused to comply with his said promise. Shortly after the decree aforesaid was rendered, said Floyd, under and by virtue of said contract, procured a division of said lot with the defendant, Lindsay, went into possession of the north half of the same, and has since received the rents, issues and profits thereof. Complainant has frequently called on the defendants and requested of the said Lindsay that he convey to him one-half of said land in accordance with his obligation, and of said Floyd that he surrender to complainant said original instrument, the possession of said land, with the rents, issues and profits thereof, together with whatever title he has obtained from said Lindsay. But defendants have refused to comply with the complainant's reasonable request, Lindsay saying that said obligation has never been surrendered to him, and that the title to said land is yet in himself, and said Floyd stating that he has already surrendered said obligation and obtained a title to one-half of said property, as well as the possession thereof, so that complainant is in doubt as to which of them he should proceed against, even if he had an unquestionable common law remedy against either.

Complainant waives discovery, and prays as follows:

That the defendants may be decreed to deliver up to be canceled any title deeds that the defendant, Floyd, has received from the defendant, Lindsay, under and by virtue of the instrument aforesaid; that they may be decreed to turn over to complainant the possession of the north half of said lot of land, and to account to him for the rents and profits thereof; that the defendant, Floyd, be compelled to turn over to complainant said original instrument, or to place the same under the control of this Court, and that the defendant, Lindsay, be held to a specific performance of his said contract, and that he be required to execute a title to complainant, in conformity therewith; that the writ of subpœna may issue.

The defendant, Floyd, answered substantially as follows:

The action of ejectment referred to in the bill was origi-

nally commenced against one Solomon Bell, the first administrator upon the estate of George Bell, deceased. Solomon Bell, as administrator, employed complainant and one Sandford W. Glass, partners, doing business under the firm name of Stansell & Glass, to represent the defense. But previous to this time, about the commencement of the year 1860, the said firm of Stansell & Glass formed a law partnership with the defendant upon the agreement that of the fees in all litigated cases in the county of Newton, he should have two-thirds. At the March term, 1860, at the special request of said Stansell & Glass, the defendant consented to take an interest in said ejectment case upon the terms aforesaid. The defendant, being the oldest and most experienced lawyer of the three, having carefully examined the titles of the contending parties, became satisfied that the defense could not be sustained at law, and advised the filing of a bill in equity for injunction and relief. It was accordingly determined between him and his partners to adopt this course. Before said bill was filed, Solomon Bell departed this life, leaving the administration upon the estate of George Bell in an unfinished condition, and in July, 1860, the defendant, Lindsay, was regularly appointed administrator *de bonis non,* and was subsequently made a party defendant to said action of ejectment. About January 1st, 1861, the defendant became Judge of the Superior Courts of the Flint Circuit, and therefore ceased the practice of the law. The partnership of Floyd, Stansell & Glass was consequently dissolved, the old firm of Stansell & Glass continuing business for a time. In August, 1861, a bill in equity was filed by complainant in the name of said Lindsay, administrator, signed "M. R. Stansell & S. W. Glass, solicitors for complainant." From an instrument now before him, the defendant is satisfied that the defendant, Lindsay, as administrator, did employ the complainant and S. W. Glass in said cause. Said instrument is as follows:

"JOHN LINDSAY, administrator, *vs.* R. J. HENDERSON, administrator.

"*Bill in Newton Superior Court.*

"I have employed Stansell & Glass, attorneys, to represent me in a case between the above parties, concerning lot of land number two hundred and nineteen, in the ninth district of Newton county, it being the place whereon George Bell died. If said Stansell & Glass gain said land, they are to have one-half of the recovery for their fees. If they fail to recover, I am to pay them nothing further for their fees.

(Signed)             "JOHN LINDSAY.

"September 10th, 1861."

The term of office of the defendant having expired, his connection with the aforesaid litigation was renewed as follows: At the March term, 1866, of said Court, complainant came to this defendant in the Court-house, and said to him that the Lindsay case would not be tried at that term of the Court, and that he had determined to attend no future session; that he had turned over his business to James M. Pace, Esq., but that he was young and inexperienced in his profession and could not manage the Lindsay case; that defendant had once been consulted in reference to it, and he wished him to take the case as his own and manage it, and take the fee if there was a recovery, stating that the fee was entirely conditional, and that Mr. Pace had the contract, which he would get and turn over to defendant. Defendant replied that he would assist Mr. Pace in that case and in any other in which complainant was interested. The complainant replied: "No. Mr. Pace could do the defendant no good in that case. He has done nothing in it, and it is my wish that you should take the case and the fee." The defendant then said, that as complainant had drawn the bill, he was entitled to compensation for that service. The complainant replied, that the defendant had done him favors which more than compensated for that. The defendant then agreed to take the sole responsibility of the case and the conditional fee. Complainant proposed to get

Stansell *vs.* Lindsay *et al.*

Lindsay's obligation for the fee from Mr. Pace. The defendant replied that as complainant was in a hurry to go home, and as Mr. Pace seemed engaged, it was unnecessary; that he presumed Mr. Pace would deliver to him the paper. From that time the defendant gave to the aforesaid litigation his attention, and was successful in recovering said land for the defendant, Lindsay. The only assistance rendered by Mr. Pace was in reading the questions or answers to a set of interrogatories used upon the trial. Soon after the decree was rendered upon the aforesaid bill, the defendant applied to Mr. Pace for the defendant, Lindsay's, obligation for fees. Pace delivered it to him with the request that should complainant object he would return said obligation, to which the defendant readily assented, as he had no doubt of complainant's consent. He paid to Pace $25 00, which he claimed under his agreement with complainant. Mr. Pace never has called on the defendant to return said obligation, and he now has, in his possession, written evidence of the consent of Mr. Stansel, and but for such consent he would have returned the same upon any such request. After the termination of the aforesaid litigation, the defendant, Lindsay, as administrator as aforesaid, under an order of the Ordinary of Newton county, sold the land, recovered as aforesaid, at public sale, and it was bid off by one Archibald Belcher, for about $626 50. This purchase was in fact for the benefit of the defendant, Lindsay, and this defendant. The land was subsequently divided by a line running east and west, defendant taking the northern half and the defendant, Lindsay, the southern half. Upon the defendant's paying the defendant, Lindsay, $50 00, the difference in value of the two halves, said Lindsay delivered to him a memorandum in writing, as follows:

"John J. Floyd having given me his receipt for $313 25, the one-half the sum for which the land was sold, is now entitled to a deed for one-half the said land, the said receipt being given to enable me to make my returns to the Ordinary. March 3d, 1868.        (Signed)        JOHN LINDSAY."

The defendant went into possession of the north half of said lot, and has since retained the possession thereof. He has caused ditches to be dug for purposes of drainage, and the bottom-land to be cleared, but as yet has realized no profits from it. He has no conveyance from said Lindsay beyond the aforesaid writing. He denies that the complainant has rendered him any professional services in Sumter county. If he has, and will present a reasonable bill therefor, it will receive prompt attention.

The record fails to disclose any answer as having been filed by the defendant, Glass.

The evidence for the complainant sustained the case made by the bill, with the exception that on cross-examination the complainant, on being presented with the original instrument, signed by Lindsay, on the subject of fees, as set forth in the defendant, Floyd's, answer, admitted its correctness. He further stated that he was unable to say why the obligation was made to Stansell & Glass, or why he signed the name of Glass, or the firm name of Stansell & Glass to the bill, unless it was from habit, as they were partners for so long a time ; that he sometimes signed the firm name in writing to his wife; that the said firm had been dissolved before the filing of said bill.

The defendant, Floyd, testified to the facts as set forth in his answer.

The evidence is omitted, as it simply consisted of a repetition of the facts alleged in the bill and answer. It was, therefore, exceedingly conflicting.

The Court charged the jury, in substance, that if they believed the charges of complainant's bill to be sustained by the evidence, they would be authorized to direct, by their verdict, a specific performance of the contract between the complainant and the defendant, Lindsay, for fees.

The jury returned the following verdict: "We, the jury, find for the complainant, and that defendants do execute to Mathew R. Stansell a deed to one-half of the land, one hundred and fifty acres, more or less, part of lot two hundred and

nineteen, (219,) in the ninth (9th) district of said county, in accordance with the prayer."

The defendants moved for a new trial, because said verdict was contrary to the law and evidence, and because of error in the aforesaid charge.

The motion was sustained, and a new trial ordered. Whereupon the complainant excepted.

CLARK & PACE, for plaintiff in error.

J. J. FLOYD; A. M. SPEER, for defendants.

McCAY, Judge.

1. We do not propose to discuss the evidence in th s case The two principal witnesses are directly in conflict upon the main facts of the case. They, too, are the real parties to the controversy; and the verdict of the jury, if there be no error of law, ought not to be disturbed by the Court. As we understand the case, the new trial was granted because the Judge, upon further argument, was of opinion that he had erred in his charge to the jury, in telling them that if they believed the complainant had made out his case, they were authorized to decree a specific performance. The new trial is granted on the ground that the original contract was one which the administrator had no right to make. This illegality of the contract is not because it was champertous, but because the administrator has, in this State, no power to charge the land with any such obligations.

We do not think there was error in the charge of the Court as the case stood. If there was a *bona fide* suit pending against the administrator for the land, we think he had the right to employ counsel to defend the title of the estate, and to charge the *corpus* of the estate with the fee. If the fee was reasonable, and a proper fee to be given, and it was fairly and *bona fide* charged on the land by written contract, we see no reason why it should not be enforced by specific performance.

Stansell *vs*. Lindsay *et al*.

The heirs-at-law are not complaining of the charge. The present defendant sets up all his rights under this contract. He is estopped from denying its validity. He cannot claim under it and deny it. He cannot be hurt by this decree, except so far as he is compelled to give up what he claims under the contract. If the heirs-at-law have any rights, they will not and cannot go on him ; and if this contract was a fair and proper one, we think the heirs-at-law cannot complain. If the administrator could contract a debt for a fee, and bind the heirs for the debt, or bind their property in his hands, to-wit: the land for the debt, we see no sound reason why the contract should be illegal because he has done by express agreement what the law would enforce by reason of the implied agreement. In the case of *White vs. Denkins*, 19 *Georgia*, 285, this Court held that the *corpus* of a trust estate might be sold by equity to pay a fee for its preservation. The only question would be one of parties. But here the fact is that the title of the heirs has been divested by a sale. The plaintiff follows the land with his claim, charging the purchasers with notice.

2. As to the question of non-joinder, there is evidence, which the jury had a right to believe that the complainant was the sole contractor; and that the introduction of Glass was a *mistake*. This was distinctly left to the jury to decide. If they believed the witness, they found rightly. We think they had a right to believe him ; and as we think the charge of the Court was not illegal, we reverse the judgment granting a new trial.

Judgment reversed.