AT THE

## MAY TERM, 1880.

---

### WASSELL vs. ARMSTRONG, Ad. of Carroll.

35 247
64 443

1. CLAIMS AGAINST THE GOVERNMENT: *Assignment of: Contracts for prosecuting.*

Lucy H. Carroll, as administratrix of the estate of George W. Carroll, deceased, entered into a contract with John Wassell, an attorney, by which it was agreed between them that Wassell should, at his own expense, prosecute a claim of Carroll's estate against the government of the United States for a large amount of cotton, which was seized in 1873 by the military authorities of the United States and converted to the use of the government, and if he recovered nothing he should receive nothing for his services and expenses incurred in the prosecution of the suits; but if he should be successful, in whole or in part, he should pay over to her only fifty dollars per bale for every bale he should recover judgment for; the overplus, if any, to be retained by him for his compensation for his services and expenses incurred in the prosecution of the suits; and full power was given him to execute to the United States all necessary vouchers, receipts and acquittances, and generally to perform all things necessary to carry out the stipulation of the contract. *Held:* That the

agreement was a mere personal contract for a contingent fee, and was not an assignment or transfer of the claim, or any part or share of it, or interest in it, to Wassell, absolute or conditional; and, therefore, was not within the prohibition of the act of congress of February 26, 1853, entitled, " An act to prevent frauds upon the treasury of the United States." [For the terms of this act, see copy in the opinion.—REP.]

2.  WITNESSES:  *Party, as to transactions with deceased administrator.*
   A party in a suit in which an administrator *de bonis non* is the adverse party, is not prohibited by the constitution of 1874 from testifying of statements and conversations of the former administrator who is dead.

APPEAL from *Pulaski* Chancery Court.
Hon. DAVID W. CARROLL, Chancellor.
*F. W. Compton* and *S. W. Williams*, for appellant.
*B. D. Turner* and *J. M. Moore, contra.*

[This cause was argued before Hon. W. M. HARRISON, Justice, and Hon. JESSE TURNER and G. W. CARUTH, Special Judges—The Hon. E. H. ENGLISH, C. J., and J. R. EAKIN, J., being disqualified.]

TURNER, S. J.    This is a suit in equity, originally brought by Lucy H. Carroll, as administratrix of the estate of George W. Carroll, deceased, against the defendant, John Wassell. She alleges in the bill that her intestate, who died in the year 1863, at the time of his death owned a large amount of cotton, exceeding one thousand bales, which, after his death, was seized by the army of the United States during the military occupation of the country by the federal troops in the year 1863, and converted to the use of the government.

That about the time of her appointment as administratrix of said estate, in July, 1865, the defendant, a practicing

lawyer, came to her, representing that he had acquired valuable information in regard to the seizure of said cotton, whereby he would be enabled to recover the value thereof from the United States government, and solicited plaintiff to employ him as her attorney to collect the same, and she, having confidence in the integrity and good faith of the defendant, was induced to place the claim in his hands for collection, upon an agreement that he would collect the same for a commission of 10 per cent. upon the amount collected, the expenses attending the collection to be borne by the plaintiff; and thereupon the defendant took charge of the claim and instituted suit for the recovery thereof in the United States court of claims.

That she, being old and infirm, and wholly inexperienced in matters of business, soon yielded the entire management of the estate to the defendant, relying upon him entirely to adopt such measures and procure such orders as were necessary, and which he frequently did, without previous consultation with her, and without her knowledge or consent. So that during nearly the entire time of her administration of the estate, the defendant has had and exercised entire control and management of the same, on account of her confidence reposed in him, she believing that he would honestly and efficiently manage the same.

The plaintiff further alleges that some time after the former contract between plaintiff and defendant about the collection of the cotton claim against the government, the defendant represented to her that there was so much difficulty and expense, doubt and uncertainty about the successful prosecution of the claim, that the fee agreed upon between them was not sufficient, and greatly magnified the trouble and expense which he had already had, and the expense he would still have to incur, and the plaintiff

then consented to an arrangement whereby the defendant should pay all expenses, costs, etc., about prosecuting the claim, and if he recovered the amount from the government he was to pay the plaintiff for her dower, or one-third, twenty thousand dollars, and the remainder of the claim to be divided equally between the estate of the said George W. Carroll and the defendant; and that in making the calculation that there would be twenty thousand dollars coming to plaintiff in her individual capacity as dower, it was understood that her third would be about fifty dollars per bale.

The plaintiff further alleges that the defendant, some time in the year 1872, succeeded in collecting on said cotton claim from the government of the United States, the sum of ninety-six thousand dollars ($96,000), the adjudged value of three hundred and forty-seven bales of said cotton, and that on the twenty-seventh of October, 1872, he filed in the probate court of Conway county a report of his proceedings as her attorney in the premises, in which he falsely and fraudulently claims the right, under certain pretended agreements stated to have been made on the twenty-third of March and the fifteenth of April, 1868, and long after he had been retained in said cause, to retain as his fee for collecting the claim, the entire amount collected except the meagre sum of fifty dollars per bale, amounting to *seventeen thousand three hundred and fifty dollars*, which he proposes, in said report, to pay over to plaintiff, and refuses to account for the residue of money so collected on said claim.

That at the same time the defendant, in connection with said report, filed an account-current in plaintiff's name as administrator of said estate, and at the ensuing January term of the probate court of Conway county, procured an

order to be made confirming said settlement, which she alleges was made and said order procured by the defend-ant, without any knowledge or information on her part, and with the fraudulent intent of giving to his illegal ex-action the authority of judicial sanction, and thus secure himself from the consequences of the fraud practiced upon the plaintiff and the beneficiaries of the estate. Copies of the report and settlement are exhibited with the bill.

The plaintiff further alleges; that the defendant, on the fifteenth of April, 1868, meditating the fraud he is attempt-ing to practice upon her, and wishing to clothe with legal authority any contract into which he might be able to in-veigle her, procured an order of said probate court author-izing her to employ an attorney to collect the said claim, upon such terms as she might deem proper; and after a lapse of four years, and after the collection of the claim, he procured an order of the said court confirming the ap-pointment of the defendant prior to the date of said order, further authorizing the defendant to prosecute all demands in favor of said estate. Copies of these orders are exhib-ited with the bill. That defendant pretends that she en-tered into a contract with him, by which it was agreed that he should pay all expenses incurred in the collection of said cotton claim, and retain for his fee all that he should collect thereon in excess of fifty dollars per bale, to be paid her as administratrix of the estate, and the fur-ther sum of ten dollars per bale, to be paid her in her indi-vidual right.

That said pretense is utterly false; and the pretended agreements referred to in said report, and which were in-tended to be legalized by the order referred to and exhib-ited with the bill, if, in fact, they exist, were forged by the defendant, or she was inveigled by his fraud and

deceit, into signing them, without any knowledge of the true character and meaning of their contents.

Plaintiff prays that said last mentioned contract be set aside, and the first mentioned contract between the parties in regard to said cotton claim be enforced, and that defendant be allowed only 10 per cent. commission on the amount collected.

That he be required to produce into court the pretended contracts referred to in exhibit "B;" that the same, and the illegal orders fraudulently obtained by him in the Conway probate court, in reference thereto, be set aside, and he be required to account and pay over to the plaintiff all the money collected by him from the United States on said claim, less 10 per cent. commission of the same.

That defendant be required to make a complete statement of all his dealings with said estate, and that he account for all sums of money belonging to said estate, in his hands, unaccounted for.

The defendant filed his answer on the nineteenth of October, 1874.

Admitting that the said George W. Carroll, at the time of his death, owned, or claimed to own, about one thousand bales of cotton, which he says was seized, on account of the disloyalty of the said Carroll to the government of the United States, as abandoned property, in the year 1863, of which about 500 bales were released to Ayliff & Hanger.

That defendant had, at the time of the seizure of said cotton, and afterwards, while it remained in the hands of the United States officers at Lewisburg, Little Rock, and places adjacent, acquired valuable information in regard to said seizure, and had taken notes and kept track of the cotton until it was shipped from the state. That it is true he represented to the plaintiff that he believed that, by

means of the information he had obtained, it would be possible to trace the proceeds of the cotton into the treasury of the United States, in the event provision should ever be made to pay the owner for such cotton.

Defendant states, positively, that he did not, at the time in said bill alleged, or any time before or after that, solicit plaintiff to employ him to collect said claim from the government of the United States. He admits it to be true, that, three or four months after plaintiff had been appointed administratrix of said estate, she applied to him to take charge of said claim, and look after the same, and to ascertain what, if any, right the plaintiff, as such administratrix, had against the United States on account of said claim, and to prosecute it if it should appear the plaintiff had any rights or remedies in reference thereto under the laws of the United States.

Denies that he became the attorney of the plaintiff, or undertook the collection of said claim upon an agreement that he would collect said claim for a commission of 10 per cent. upon the amount collected, all expenses about collecting the same, over and above such commissions, to be paid by plaintiff, or upon any such, or like, agreement.

Defendant avers that no contract of any kind was entered into between plaintiff and defendant at the time mentioned in said bill, as to what compensation he should receive, nor until long after that time; and he avers that the only contract which was ever entered into with plaintiff, as to the amount of compensation he should receive, is that of the twenty-third of March, 1868, referred to as exhibit "A."

And he denies, unequivocally, that he ever misrepresented, or magnified, the difficulties and uncertainties attending the prosecution of said cotton claim, but avers

that, in reference thereto, he acted in perfect good faith, giving her all the information he possessed on the subject. Denies all unfair dealing with plaintiff, and every allegation of fraud charged in the bill.

Denies that he ever procured orders and took any important steps in the management of said estate, without previous consultation with her, or without her consent, and that he did not take and assume the management of said estate, or in any manner conduct the affairs thereof, without the knowledge or consent of plaintiff, in any instance or particular whatever.

That he managed the affairs of said estate with the greatest candor and fairness, as far as the same were intrusted to him, and that no order, or steps, important or unimportant, were ever taken by him, except with the knowledge and consent of plaintiff, nor until the matter had been fully explained and understood.

Defendant avers that, after repeated efforts were made to procure counsel in Arkansas, and at Washington City, to prosecute said claim, every effort failed, although both plaintiff and defendant exerted themselves to procure such counsel.

That, in this condition of things, the plaintiff offered to sell said claim to defendant for five thousand dollars, and when he declined to buy the claim, plaintiff proposed to him that he should take the whole control of the claim, furnishing all moneys that should be necessary to prosecute the same, pay all attorneys' fees, and all other expenses, without recourse on her or on said estate, in the event of failure, for such moneys as he might expend and lay out, and account to said estate for the sum of fifty dollars for every bale of cotton he might recover for; plaintiff adding that, unless he would do this, the whole claim must be

abandoned. That, after reflection, and upon the earnest and repeated solicitations of the plaintiff, defendant concluded to accept plaintiff's proposition, and to furnish means to prosecute the claim, although he regarded it like an adventure in a lottery scheme—he had a hundred-fold more chances to lose than to win.

That, at that time, the statute of limitations had so nearly run against said claim that it would have been barred before the fifteenth of April, 1868, the time when the probate court of Conway county would next meet, and to have waited until the meeting of the court to procure authority from said court to plaintiff, as such administratrix, to make and execute a contract with defendant to prosecute said claim, would have delayed the matter until the claim was fully barred, and until the estate would have had no semblance of claim against the government.

That, in view of this fact, on the twenty-third of March, 1868, an agreement, in writing, conforming, in all things, to the proposition made by plaintiff, was made and executed by the plaintiff, as such administratrix, and the defendant; which agreement is referred to as exhibit "A," and made part of defendant's answer.

That, at the time said contract was made, the said administratrix, not having been empowered by the order of the probate court of Conway county to make such contract, and it being absolutely necessary that suit should be immediately brought upon said claim, to prevent it being barred by the statute of limitations, for these reasons, the contract was executed without such order, upon the express understanding that plaintiff, as such administratrix, should apply to said probate court, at the next term, for an order authorizing her to employ an attorney to prosecute said claim, and that, upon such order being made, plaintiff

would ratify and confirm the contract of the twenty-third of March, 1868.

That afterwards, on the fifteenth of April, 1868, while the probate court of Conway county was in session, upon the application of plaintiff, as administratrix of said estate, an order was made and passed by said court, authorizing plaintiff, as administratrix of said estate, to employ an attorney for said estate, on any terms she might think proper, to collect the claim for said cotton.

Defendant files a transcript of said order from the records of the probate court of Conway county, marked exhibit "B," and makes the same a part of his answer.

That afterwards, on the twentieth of April, 1868, after reciting the said order, the plaintiff, as such administratrix, by an indorsement of that date in pursuance of said order and the agreement of plaintiff, she fully ratified and confirmed said contract of the twenty-third of March, 1868, which instrument of writing is duly signed by said administratrix and defendant, and is written upon the same sheet of paper as the original contract, and a copy thereof is contained in exhibit "A" and made a part of the answer.

That this was the only contract ever made between plaintiff, as administratrix of said estate, and defendant, touching the collection of said claim, and the terms upon which it should be done.

That no contract or agreement fixing the amount of his compensation, until the contract in exhibit "A" set forth, was ever executed or entered into between plaintiff and defendant, and that this was the only contract, written or verbal, ever made between them, touching or fixing his compensation for his services and outlay in prosecuting said claim.

Defendant admits that he did, after a long and tedious

litigation and great expense, succeed in collecting on said cotton claim, from the government of the United States, the sum of ninety-three thousand three hundred and fifty-three dollars and sixty-five cents ($93,353.65), being the adjudged value of three hundred and forty-seven bales of cotton.

That he filed a report of his proceedings, after submitting the same to plaintiff and approved by her, in the Conway probate court, at the time in said bill stated.

That at the same time he filed an account, exhibited with and made part of the answer, in the name of said administratrix, and he avers that he did so at plaintiff's request; that said account-current and report were not filed until they had been fully examined by plaintiff and approved in all things, and not until the account-current had been signed by plaintiff, as such administratrix.

That by said report and account-current, it fully appeared and was definitely stated that defendant had, in pursuance of said contract, accounted to said estate for fifty dollars per bale of the amount collected upon said claim, and retained the remainder according to the terms of his contract with plaintiff.

That the order confirming said settlement was not obtained by the procurement of defendant, but in the due course of the practice of said court, and after the account had been on file in said court for the time required by law without any exceptions being taken thereto.

Defendant avers that all of said orders were regularly and lawfully obtained, and by the knowledge, consent and direction of said plaintiff, and were not sought for or procured by defendant for his protection. That all of said orders were granted on the motion of the plaintiff by said

probate court, on full hearing and understanding of all the matters involved.

That after said cotton claim had been collected, defendant paid over, by plaintiff's direction, to the creditors of the estate, the sum set out in said report, taking proper receipts therefor, which said plaintiff, with a full knowledge and understanding of the whole affair, accepted in full and entire satisfaction of the amount due the estate on said cotton claim, and that when said report had been made and all questions adjusted and settled between plaintiff and defendant in relation thereto, he did pay to said plaintiff the sum of ten dollars for every bale of cotton for which recovery was had, which plaintiff accepted and received, and defendant denies that he thought of or intended to bribe plaintiff, or purchase her silence, or that the sum of ten dollars per bale was given or accepted in violation of plaintiff's or defendant's duty, or in fraud of the rights of the beneficiaries of said estate.

On the twenty-first of January, 1879, the plaintiff moved the court to exclude the evidence of the defendant contained in his answers to certain interrogatories in the original deposition taken on the sixteenth of January, 1879, and the answers to certain interrogatories of the second deposition, taken on the eighteenth of January, 1879, because the same relate to transactions between defendant and Mrs. Lucy H. Carroll, who was deceased at the time of taking depositions, and on the ground of irrelevancy. Whereupon the cause was submitted to the court for final hearing, on all the papers filed in the cause.

The Chancellor, after delivering a written opinion in the cause, rendered a decree against the defendant for the sum of sixty-two thousand five hundred and three dollars and

thirty cents, and costs. From this decree defendant appealed to this court.

The decision of this cause depends upon the effect to be given to the contract of the twenty-third of March, 1868, exhibited with and made part of defendant's answer.

Was it a valid and binding contract? Or, was it unauthorized by law?

This contract and memorandum thereto attached, is in the words and figures following:

"Memorandum of agreement made in Conway county, Arkansas, this twenty-third day of March, 1868, between Lucy H. Carroll, administratrix of the estate of George W. Carroll, deceased, and John Wassell, attorney at law, Little Rock, in said state:

" WHEREAS, There was a quantity of cotton, in bales and otherwise, on the plantation of the late George W. Carroll, in the winter of 1863 and 1864, said cotton being seized by the federal authorities; and, whereas, said John Wassell, being conversant with the matter of seizure, as aforesaid; and, whereas, in 1865, the said administratrix secured the services of the said Wassell, as her only attorney to prosecute the claim of the estate for the recovery of the cotton, so seized, or a portion thereof; and, whereas, said estate being utterly insolvent, there being no money on hand, or anything to convert into money; that without services or means of an attorney versed in the matter, all is lost to the estate and its creditors; and, whereas, no one could be found, having a knowledge of the matters, and who would advance necessary means to pay expenses in prosecuting a suit or suits for said cotton, except said Wassell. It is, therefore, agreed between the administratrix and said Wassell that he should prosecute the said claim against the said government of the United States for said cotton, so

taken for confiscation and sale by the military authorities, at his own personal expense and risk; that should he recover nothing by said suits, he should lose all moneys he may have expended, and his labor and legal services performed by himself and other attorneys he may employ in prosecuting said claim, whether in the court of claims of the United States, or on appeal to the supreme court of the said United States. Should he be successful in said claim, in whole or in part, he shall be required only to pay over to the said administratrix the sum of fifty dollars per bale on the number of bales he may recover judgment, the overplus, if any, to be retained by him for compensation for his own services, or those he may associate with him in said suits. That full power is given him to perform, in all things, whatever may be required to enable him to carry out the foregoing stipulations. To give all proper receipts and vouchers, releases or acquittances to the United States government, or any of its officers, or agents, in this behalf, as fully as said administratrix herself could do if personally present.

"LUCY H. CARROLL, adm'x.

[Stamp.]                    "JOHN WASSELL."

"Additional memorandum:

"WHEREAS, The honorable the probate court of Conway county, Arkansas, on an application of said administratrix, Mrs. Lucy H. Carroll, made the following order, on the fifteenth day of April, 1868:

"Lucy H. Carroll, administratrix of George W. Carroll, deceased:

"On this day it is ordered by the court that Lucy H. Carroll, administratrix of the estate of George W. Carroll, deceased, be empowered and authorized to employ an attorney for said estate, on any terms she may think proper

for the best interests of said estate, to collect claims for said estate for cotton. It is therefore agreed that the foregoing contract, made before the making of the above order, be in all things ratified and confirmed by both of said parties, the same relating back to the first inception of the taking of the said cotton by the United States military authorities in the winter of 1863 and 1864, embracing all services rendered or to be rendered about the same, and none other. Witness our hands, April 20, 1868.

"LUCY H. CARROLL, Adm'x.

[Stamp.]                    "JOHN WASSELL."

The plaintiff contends that this contract is in substance an assignment of plaintiff's claim against the United States, in whole or in part, so as to bring it within the prohibition of the act of congress, approved February 26, 1853, entitled "An act to prevent frauds on the treasury of the United States," and, therefore, void. This act declares that "all transfers and assignments thereafter made of any claim upon the United States, or any part or share thereof, or interest therein, whether absolute or conditional, and all powers of attorney, orders, or other authorities for receiving payment of any such claim, or any part. or share 'thereof, shall be absolutely null and void, unless the same shall be freely made and executed in the presence of at least two attesting witnesses, after the allowance of such claim; the ascertainment of the amount due, and the issuing of a warrant for the payment thereof."

1. CLAIMS AGAINST THE GOVERNMENT. Assignment of. Contracts for prosecuting.

Can the plaintiff's position be maintained? And is the contract within the prohibition of the act of congress? The object of the contract is distinctly set forth by the instrument itself. It does not, upon its face, purport to assign or transfer the claim, or any part of it, to Wassell. After the introductory recitals, it provides that Wassell shall

prosecute the claim against the government at his own expense, and if he recovers nothing, he is to receive nothing for his services, and lose all money he may have expended, and his labor and legal services performed by himself and other attorneys he might employ in prosecuting the claim, but if he recovered anything he was required to pay over to the administratrix the sum of fifty dollars per bale on the number of bales of cotton he might recover judgment for, retaining the overplus, if any, for compensation for his own services, or those he might associate with him in the prosecution of the claim.

The primary object of the agreement between the parties was the employment of Wassell to prosecute the claim against the government of the United States. This he agreed to do for a contingent fee, the amount of which (if any) could only be determined by the result of the suit or suits to be instituted for the recovery of the claim.

Does the agreement of the administratrix to pay Wassell a contingent fee out of the amount to be recovered operate as a transfer and assignment of the claim, or any part of it, so as to create a lien on the fund in favor of Wassell; or is it simply a personal agreement to pay Wassell a contingent fee for services to be rendered in the prosecution of the claim?

Cases analogous to this, and involving similar questions, have repeatedly been decided by the courts, both federal and state.

In the case of *Trist v. Child, 21 Wal., 441,* Trist had a claim against the United States for services rendered in 1848, touching the treaty of Guadaloupe Hidalgo; employed Child, a lawyer of Boston, to prosecute the claim before congress. Child was to receive for his services 25 per cent. of whatever claim congress might allow in payment for the

claim. The fee was wholly contingent. Child died, but his son and representative, L. M. Child, continued the prosecution of the claim. Congress appropriated over $14,000 to pay the claim. Trist refused to pay the 25 per cent. which he had agreed to pay. Child then applied to the treasury department to suspend the payment of the money to Trist. Payment was suspended, and the money remained in the treasury.

Child now filed his bill against Trist, praying that he might be enjoined from withdrawing the said sum of money from the treasury until he had complied with his agreement about the compensation, and for decree for $5,000.

Judge Sawyer, in delivering the opinion of the court, said: "It is well settled that an order to pay a debt out of a particular fund belonging to the debtor, gives to the creditor a specific equitable lien upon the fund, and binds it in the hands of the drawee. A part of the particular fund may be assigned by an order, and the payee may enforce payment of the amount out of the drawee, but a mere agreement to pay out of such fund is not sufficient. Something more is necessary. There must be an appropriation of the fund *pro tanto*, either by giving an order or by transferring it otherwise, in such a manner that the holder is authorized to pay the amount directly to the creditor without the further intervention of the debtor.

"Viewing the subject in the light of these authorities, we are brought to the conclusion that the appellee (Child) had no lien upon the fund here in question. The understanding between the elder Child and Trist was a personal agreement. It could in nowise produce the effect insisted upon. For a breach of the agreement the remedy was at law, not in equity. * * * * In that case the agreement was to allow Child, as a compensation for his services, 25 per cent.

of whatever sum congress might appropriate in payment of Trist's claim."

In this case the agreement was, that Wassell and those associated with him should receive as compensation for services the excess over fifty dollars per bale of cotton of the amount recovered.

The attorneys in both cases were to receive compensation for their services out of the respective amounts to be recovered.

In the former case, the court decided that the contract between Trist and Child was merely a personal agreement between the parties, and created no lien upon the fund appropriated by congress; and if so, why may we not treat the contract between the administratrix and Wassell as merely a personal contract between the parties, providing for compensation to Wassell and his associates for their services in prosecuting said claim against the government? And if so, could it create a lien in favor of Wassell on any part of the fund recovered?

In the case of *Spofford v. Kirk, 97 U. S. Rep., 484,* to which we are referred, Kirk, who had employed Hosmer & Co. to prosecute his claim for $12,000 against the United States for supplies furnished during the late war, before the allowance of the claim, drew upon the firm two orders —one in favor of J. S. Wharton, and the other in favor of E. R. Taylor—to be paid out of the fund to be collected. These orders were duly accepted by Hosmer & Co., and were afterwards sold to Spofford.

Upon the issue of the treasury warrants for the sum awarded to Kirk, Spofford made demand upon Hosmer & Co. for the payment of the orders.

Kirk refused to indorse the warrant, or to admit the validity of the orders. Spofford filed a bill to enforce com-

pliance with the orders and acceptances, and to enjoin Hos-- mer & Co. from surrendering, and Kirk from receiving, said warrant. Bill dismissed, and an appeal taken to the supreme court of the United States.

*Held*, by the court, that the orders became, upon accept- ance, and in the absence of any statutory prohibition, an assignment *pro tanto* of the claim, and that under the act of February 26, 1853, the accepted orders were void, and that Spofford took no interest in the claim, and acquired no lien upon the fund arising therefrom.

In this case there was a distinct and specific appropria- tion of the respective amounts mentioned in the orders; and these orders and acceptances determined and set apart the specific amounts to be paid out of the general fund, and the court consequently decided the orders and acceptances void under the act of congress of 1853.

But the case under consideration is unlike this. In it we have no orders or acceptances on the fund to be recovered from the United States, and we have no assignments or specific appropriation of any amount whatever for the ben- efit of Wassell, but the administratrix agrees to pay him a contingent per cent., out of the amount collected, for the services of himself and associates.

We are referred, in the brief of plaintiff's counsel, to *1 Court of Claims, R; 12 ib., 288; 3 ib., 65; ib., 312.* Upon examination of the cases referred to in these reports, we are of opinion they have no special application to the ques- tion before us.

The case of *Jones v. Blackledge, 9 Kansas, 562,* was found- ed on an agreement between Jones and Blackledge, where- by Jones employed Blackledge to prosecute and collect a claim against the government of the United States for the sum of $67,000, for which services Jones agreed to pay the

said Blackledge 20 per cent. on the amount of said claim
when collected.   The supreme court of Kansas decided this
was a conditional transfer, or assignment, of a part of said
claim against the United States, and void.   With great re-
spect for the supreme court of Kansas, we think this de-
cision is not well sustained by authority or reason.   The
contract does not even provide for the payment of the per
centage out of the amount to be collected.   It is simply a
personal contract between the parties, and this decision is
in direct conflict with several decisions of the supreme court
of the United States. ·

See the case of *Trist v. Child;* also, *Wright v. Tibbetts*, *91
U. S. Reports, 252.*

In the case of *Maybin v. Raymond, assignee, Raymond v.
Harris et al.:*

In the United States district court, southern district of
Mississippi (*15 Bank Register, 353*), Harris & Harris, a firm
of solicitors at Vicksburg, who had prosecuted a claim
against the United States for Maybin and his assignee,
Raymond, by which Maybin, before his bankruptcy,
agreed that in consideration of their prosecuting said
claim and paying all expenses incident to such prosecution,
they were to have and retain one-half of the amount they
might recover from the United States.

Harris & Harris and their associates at Washington, re-
covered for their client $71,020, of which amount they.
were entitled to and received one half.

The court (Judge Woods) said:

"Under this state of facts there can be no doubt of the
right of Harris & Harris and their associates to one-half
the net proceeds of the fund, notwithstanding the fact
that, during the pendency of the cause in the court of
claims, Maybin had been adjudged a bankrupt, and before

the moving of judgment in that court, Raymond, his assignee had been made a party plaintiff to the suit. Harris & Harris and their colleagues were not only will ng to prosecute the suit after the bankruptcy, and after the assignee was made a party, but actually did prosecute it to a successful final judgment and recovery of the money. Their services were accepted by the assignee, and he now enjoys their fruits. When their services had been rendered according to the contract and the money recovered, they had a right to one-half of the amount."

We have thus briefly reviewed the cases supposed to bear upon the question under consideration, and have come to the conclusion that the contract of the twentieth of March, 1868, is not within the prohibition of the act of February 26, 1853, and is, therefore, so far as affected by that act, valid and binding on the parties.

It is, however, objected that the administratrix had no authority to make the contract of the twenty-third of March, 1868, and we are referred to our statute providing for the employment of an attorney to prosecute or defend suits brought by or against executors or administrators.

The statute provides that: "When it shall become necessary, in the opinion of the court, for an executor or administrator to employ an attorney to prosecute any suit brought by or against such executor or administrator, the attorney so employed shall receive as a compensation for his services, 8 per centum on all sums less than three hundred dollars, and on all sums over three hundred and less than eight hundred dollars, 4 per centum.    *    *    *

"Such attorney's fees shall be paid as expenses of administration, but no attorney shall be allowed any executor or administrator unless for the prosecuting or defending a

suit under the direction of the court." *Gantt's Digest, secs. 195, 197.*

While the passage of this law has served a good purpose in restraining executors and administrators from incurring unnecessary expense in the administration of estates by employing attorneys when not actually needed, yet, in view of the exigencies often arising in the administration of estates, we are disposed to regard the statute as intended to be directory rather than as imperative and prohibitory, and we are of the opinion that whenever an emergency or overruling necessity arises in the administration of an estate, requiring the executor or administrator to act promptly, in order that the property of the estate may be protected and preserved from loss, that such executor or administrator ought to act at once, without waiting for the order or direction of the probate court; for delays in such case might be injurious, if not disastrous to the interests of the estate.

In the case of *Turner v. Tapscott, administrator, 30 Ark., 312,* Justice WALKER, who delivered the opinion of the court, quoting Chief Justice ENGLISH in the case of *Bomford v. Grimes, administrator, 17 Ark., 567,* who said: "When the administrator finds it necessary to call in medical assistance, he has the right and it is his duty to do so, not only as a matter of humanity, but by way of preserving them as property of the estate, and it would be the duty of the probate court to allow the administrator the reasonable expenses so incurred, as part of the costs of the administration."

The court, further commenting upon, and in approval of the decision of the court in the case of *Bomford v. Grimes, administrator,* said: "The necessity for the services was urgent and did not admit of delay until an order

of court could be procured for that purpose; and upon like reasoning should the assistance of an attorney become necessary in order to protect the estate or to prevent its loss or waste, as when replevin is necessary to regain possession of property, or when suit is brought against an estate which requires that a defense should be interposed to prevent its loss, it would be the duty of the administrator, without an order authorizing him to do so, to employ counsel, and when the services are rendered for the benefit of the estate, the probate court, upon proof, should allow the attorney's fee, as part of the necessary expenses of administering the estate. If fees, under such circumstances, are to be held as a personal charge upon the administrator, no counsel would be employed, and the estate would be wasted."

Indorsing, as we do, the opinion of the court in the case of *Turner v. Tapscott*, and holding that an administrator has a right to employ an attorney to prosecute or defend suits, without the previous order of the probate court, if deemed necessary to save and protect the interests of the estate from loss, we are led to inquire, what was the condition of the estate of George W. Carroll, deceased, on the twenty-third of March, 1868? Was it such as to require the employment of an attorney to save and protect its interests from loss? The estate was considered insolvent, yet it was asserting a large claim against the government of the United States for cotton seized by the military authorities on the plantation of Carroll, in 1863–4, but did not have a dollar to employ an attorney to prosecute the claim, or defray necessary expenses attending its prosecution.

It seems that after repeated efforts and failure to procure counsel, Mrs. Carroll appealed to Wassell to take charge

of the claim, proposing the terms and conditions of his employment, the amount to be paid her as the administratrix of the estate of George W. Carroll, deceased, and his own compensation and that of such attorneys as he might employ to assist him in the prosecution of the claim. This proposition was reduced to writing and signed by the parties thereto, and constitutes the agreement or contract of the twenty-third of March, 1868, which Wassell, in his deposition, states was the only contract he ever entered into with the said administrator in regard to said cotton claim. It is true, the plaintiff sets up a different contract, and what she calls an "arrangement," made with Wassell, long previous to the contract of the twenty-third of March, but this is denied by Wassell, in his answer, and there is no proof of such contract or arrangement. We must then conclude that the contract of the twenty-third of March, 1868, is the one under which Wassell agreed and undertook to prosecute the cotton claim against the government. This is the testimony of Wassell himself. He is a competent witness in the case, and we do not feel at liberty to ignore or disregard his evidence.

It appears that within a few days after the execution of the contract of the twenty-third of March, 1868, the claim would have been barred by the statute of limitations. The next term of the probate court of Conway county was to be held on the fifteenth of April following, and before that time the claim would have been barred and wholly lost. In such an emergency as this, the administrator employed Wassell to institute suit for the recovery of the claim, and thus prevented the statute bar.

Aside from the many other difficulties which attended the collection of the claim, this was an extraordinary exi-

gency, and we think well warranted the administratrix in making the contract with Wassell.

The letters from Wassell to Corwin, for the purpose of showing a different contract between the parties than that of the twenty-third of March, 1868, could not affect the validity of that contract, for although Wassell was guilty of misrepresentation in his correspondence with Corwin, which the court does not justify or approve, yet we regard these letters as in the nature of parol evidence, if evidence at all, which could not invalidate or affect the written contract between the administratrix and Wassell.

It appears that from the necessities of the case, the contract was made and Wassell employed to bring suit against the government for the recovery of the cotton claim, before an order was obtained authorizing the administratrix to employ an attorney for that purpose. That at the first term of the probate court of Conway county, held thereafter on the fifteenth of April, 1868, an order was made by the court, on the application of said administratrix, authorizing her, as such administratrix, to employ an attorney for said estate, on any terms she might think proper, to collect the claim for said cotton. A transcript of this order is filed with and made part of defendant's answer.

That after the making of said order, on the twentieth of April, 1868, the administratrix ratified and confirmed the contract of the twenty-third of March, 1868, by indorsement thereon, in writing, which is exhibited with the contract and made part of the defendant's answer.

It further appears that at a subsequent term of the probate court of Conway county, on the eighth of April, 1872, after reciting previous orders, it was further ordered, "that the employment of the said John Wassell as attor-

ney of the said administratrix be approved, and that he have full power under the direction of the administratrix to prosecute all suits in behalf of the estate, on such terms as she might agree to and direct, in accordance with the former orders of the court."

It further appears that the defendant, afterwards, made a report, in writing, to plaintiff. This report details with particularity the services of himself and associates in the prosecution of the claim—the difficulties surmounted and expenses incurred in conducting the suit against the government, and announces his final success in the recovery, for a large amount of cotton, against the United States, seized and appropriated by the government during the late civil war.

In this report Wassell sets forth distinctly the contract between himself and the administratrix, of the twenty-third of March, 1868, and stating that judgment had been recovered in the court of claims of the United States for 347 bales of cotton, which, at fifty dollars per bale, amounted to $17,350, to which she was entitled, under the contract, which he then paid over to the administratrix.

It further appears that at the same time an account-current was made out by said administratrix, under the direction of her attorney, the said John Wassell, exhibiting a detailed account of her administration of said estate in which she charges herself with the said sum of $17,350, received from Wassell on the contract of the twenty-third of March, 1868, and credits herself with $5,783.33, her dower interest in said sum, and claims credit for other items of expense, amounting to $5,064,48, leaving a balance in the hands of the administratrix of $6,501.19, which

it appears was paid out by the administratrix *pro rata* on the claims allowed against the estate.

It appears from the evidence of Wassell that the report and account-current were placed in the hands of the administratrix for examination and inspection, where they remained for some weeks, and were filed in Conway probate court on the twenty-ninth of October, 1872.

The account-current having remained on file in the probate court from the October to the January term following, without exceptions having been filed thereto, upon settlement, there was found to be in the hands of the administratrix, a balance of $498.69, with which she was charged, and thereupon the settlement and account-current were approved by the court. So it appears to the court that Wassell, in conducting the prosecution of said claim against the government, from the beginning to the end of it, was acting in obedience to the wishes of the said administratrix, and for the purpose of carrying out his contract of the twenty-third of March, 1868, while the probate court exercised a supervising control and direction over the whole matter.

We dismiss the allegations of fraud in the bill. They are denied by Wassell in his answer, and are not supported by satisfactory evidence. We think they have no solid foundation to rest upon.

Wassell might well have spoken of the difficulty and uncertainty attending the collection of such a claim against the government, and this without exaggeration.

Circumstances tended strongly to show that the cotton in question had been disposed of to the Confederate States of America, and the belief seemed general, at that time, that it would be necessary to prove the loyalty of Carroll to the government of the United States, to insure a successful

18

prosecution of the suit, which proof it was known could not be made.

So we see that the surroundings of the claim, at the time, were by no means promising.

It seems, too, that Wassell was the only person who could be obtained to undertake the prosecution of the claim, and that he engaged in it, according to his evidence, on the terms proposed by the administratrix herself.

Wassell's recovery was probably more than any one expected. Looking at it now, and viewing it in the light of accomplished results, we are apt to think the sum retained by Wassell disproportionate to the services rendered by himself and associate attorneys.

But we ought not to forget that of the sum retained by him, large amounts were paid out to his associate attorneys for their services, and to others large amounts seemed necessary to insure a successful prosecution of the suits, as well as a heavy individual expenditure.

Then we should not forget that Wassell's fee was contingent. If the end could have been seen from the beginning, there would have been no difficulty in getting attorneys to prosecute the claim, and for a moderate fixed fee. But the end could not be foreseen, hence the fate of the claim was involved in doubt and uncertainty, and learned and experienced lawyers, who practice in this court, tell us in their depositions that the contract of the twenty-third of April, 1868, was, under all the circumstances of the case, fair and reasonable, and we can not say that it was not.

2. WIT-
NESSES:
Parties, as to transactions with deceased administrator.

The objections to Wassell's evidence, touching statements and conversations of Mrs. Carroll, we think are not well taken. Her case is evidently not within the excep-

tions of the second section of the schedule to the constitution of 1874.

As to the agreement and compensation of Wassell:

Contracts made with attorneys, whereby the attorney, if successful, is to receive part of the property recovered, are of frequent occurrence.

In the case of *Child v. Trist*, already referred to, the attorney was to receive part of the sum recovered.

In the case of *Maybin v. Raymond*, previously referred to, Harris & Harris, the attorneys, were to receive one-half of the sum recovered, they paying all expenses attending the prosecution of the suit.

In the case of *William P. Hoffman v. Jose Jesus Vallejo et al., 45 Cal., 564,* it was decided that "it is not against public policy for a party claiming title to land to enter into a contract with an attorney, by which it is agreed that the attorney shall commence legal proceedings for its recovery, and pay the costs, and, in consideration of his services and expenditure of money, have an undivided one-half of all the land recovered, and the undivided one-half of all that may be recovered or obtained by reason of any compromise or settlement of the matter, and that the party claiming the land shall not make any settlement or compromise without the consent of the attorney."

And this contract was upheld by the court.

In the case of *Stansell v. Lindsay et al., 50 Ga., 360,* where an administrator was sued in ejectment, and contracted with an attorney to defend the suit, and agreed to give him one-half the land if the defense was successful, the court decided the contract between the administrator and the attorney to be valid and binding on the parties.

Judge McCoy, in delivering the opinion of the court, said: "If there was a *bona fide* suit pending against the

administrator for the land, we think he had the right to employ counsel to defend the title of the estate, and to charge the *corpus* of the estate with the fee to be given, and it was fairly and *bona fide* charged on the land by written contract, we see no reason why it should not be enforced by specific performance."

See, also, *1 McArther, Del.*

Having concluded our review of this case, we repeat, in conclusion, that we regard the contract of the twenty-third of April, 1868, as of valid and binding force, and having, as we hold, been executed, in letter and spirit, by the parties thereto, it can not now be disturbed.

We are, therefore, of opinion there is error in the Chancellor's decision, and we do reverse the decree in this cause and dismiss the bill.