Chief Justice Marshall
delivexed the opinion of the Court, which was suspended by petition for re-hearing unlilthe 27th July, when the petition v>as overruled.
In bar of this action of ejectment, which was brought upon the joint and several demise of nine lessors, the defendants, under the 3d section of the champerty act of 1824, (Statute law, 286,) pleaded that on the 9th day of August, 1845, (which was some days before the commencement of the action,) the defendants severally held possession of the land sued for adverse to the ■right and title of the plaintiff’s lessors, and that on that day, certain of the lessors named, (and four in number,) entered into a contract with Harlan & Craddock, attorneys at law, for the institution of the present suit, and for the recovery of the land in controversy by them as their attorneys, and in consideration of their obtaining judgment and possession of the land for them, agreed that said Harlan & Craddock should 'have part and profit of the same, to-wit: one-fourth ■of the proceeds of the sale of said land when sold by them, out of which fourth the costs and expenses ■of the suit were to be deducted; and the plea proceeds to set out the contract as being in these words: “The subscribers, as devisees of John Ramsey, deceased, as the owners of ten thousand acres of land, lying in the ■counties of Washington and Anderson, in the State of Kentucky, and several parcels thereof being in the possession of one James Trent andothers,wehaveemployed Harlan & Craddock to remove the intruders and obtain full possession of our entire tract of land. Now if the said Harlan & Craddock shall succeed in recovering judgment and of obtaining of said parcels of land *337 for us, then we oblige ourselves to pay them one-fourth of the value of each parcel of land so recovered, and in the same proportion for whatever maybe recovered, payable when we make sale of the same — all expenses and costs are to be deducted from said one fourth of the value of said parcels, and the remainder or balance to be paid to said Harlan & Craddock.” ,
Judgment of the General Court.
A demurrer to this plea was overruled, and thereupon the plaintiff for replication to the plea, averred that the persons therein named (and who were parties to the agreement) were not the only heirs and devisees of John Ramsey and claimants of the land sued for and only lessors of the plaintiff, but that five other's named in the replication are also heirs and devisees of said John Ramsey and claimants of said land and joint and several lessors of plaintiff; that the said defendants were not in the adverse possession of the land in contest under conflicting title to that of the lessors of the plaintiff, but that said defendants, or those under whom they claim, before the commencement of this action, viz, on the day of , at the State aforesaid, severally took from one Isaac B. Cox, a lease for the lands in contest for the use and benefit of said plaintiff, and became and were the tenants of said lessors of plaintiff on said land, recognising and acknowledging the title of said plaintiff, and that said defendants so continued to hold under and recognize said plaintiff’s title, until within less than twenty years previous to the .commencement of this action, wherefore, &c. A demurrer to this replication was sustained, and judgment having been rendered thereon in bar of the action, the case comes to this Court upon these pleadings alone.
The first part of the replication was intended, as we suppose, to raise the question whether the agreement of a part of the lessors even if champertous could bar the entire action brought upon the joint and several demise of five other lessors with them. The same question, howavm, arises on the demurrer to the pira, and this part of the replication does not introduce any material fact in addition to those appearing in the declara *338 {¡on an¿ p]ea„ We remark upon this part of the case, that in the contract set out in the plea, the four persons therein named as the employers of Harlan & Craddock are represented as owners of the land. And although the replication states that the five other persons are also heirs and devisees of John Ramsey and claimants of the land, it does not state them to be part owners, and upon these pleadings the implication is that the suit was instituted by and for the benefit of the four lessors who were parties to the contract, though in the name of other lessors with them. If, therefore, the contract be champertous, we are inclined to the opinion that, although made by four only of the lessors, it is a bar to the whole action. What would be its effect, if it appeared that all of the lessors wei’e really interested in the claim and in the action, we need not decide. The statement that they were devisees and claimants of the land and joint and several lessors of the plaintiff, is not deemed sufficient to counteract the recital in the contract under which the suit was instituted and carried on.
The last part of the replication is intended as a special traverse or qualified denial of the adverse possession alleged in the plea and which w:as essential to make the contract therein set out champertous within the act of 1824. It does not deny the averment of the plea that the defendants held the possession adverse to the right and title of the lessors at the date of the contract, but denies that they were in possession under conflicting title to that of the lessors. The first section of the statute makes void a sale or conveyance of land of which any other than the vendor or vendee shall at the time have possession adverse to the right or title so sold or purchased. The second section denounces a contract or undertaking to recover or carry on a suit for recovery of any such pretended title to land of which adverse possession is held under conflicting title as aforesaid, for or in consideration to have part or profit thereof. It then goes on to deny the right of action upon such contract to either party, and *339 declares that such title or claim shall vest in the commonwealth, and enure to the benefit of-the person in possession without office found. The third section authorises the person, so in possession, his heirs or assigns to plead such contract in bar of any action or suit brought upon the title to which it relates. Going back to the possession which is to vitiate the contract, it seems to us that the same possession which under the first section would make the sale or conveyance void, would under the second make the contract for recovering the land also void, with all the consequences mentioned in the second and third sections. The second section, it is true, speaks of adverse possession under conflicting title, whereas, if there were nothing more, it might be inferred that the adverse possession must be under a title derived from the commonwealth, or at least under paper title. ' But the section says “under conflicting title as aforesaid,'’'' evidently referring to the first section and to the adverse possession therein described, which is a possession adverse to the right or title so sold, and requires no other title in the person in possession than such as is sufficient to make his possession adverse. Possession under claim of ownership is itself a grade of title, and will suffice to constitute the conflicting title referred to in the third section, which being necessarily adverse to the right and title sold or conveyed by another, it also suffices under the first section to make void the sale and conveyance. This adverse possession under claim of ownership, which is sufficient under both sections, is not in our opinion directly denied by the averment of the replication that the possession was not under conflicting title to that of the lessors. But this .qualified denial is itself but an introduction to the subsequent averments which are intended to show that the possession war not held under conflicting title, or at any rate was no' such as to render the contract champertous under the statute.
The principle relied on to take the case out of the statute is no doubt correct, and is sustained by the case *340 of Castleman vs Combs, (7 Monroe, 276,) and other cases in which it is in effect declared that the statute does not apply where the occupant holds in such a manner that he is bound to surrender to the vendor without questioning his title. This principle it is admitted applies as well to a contract for the recovery of the land as to a sale or conveyance of it. But the principle is that if the occupant is under such obligation to surrender the possession, his possession is not adverse within the statute; and in order to make the principle applicable to the case, it must appear that the obligation to surrender existed at the date of the conveyance or contract.
Wilhite vs Roberts: (4 Dana -172) cited and approved.
We are of opinion that the replication does not sufficiently show this essential fact. It avers indeed that the land was. at some uncertain period leased to the defendants for the benefit of the lessors; that they became and were the tenants of the lessors holding under and recognizing their titles, and so continued until within less than twenty years before the commencement of the action. But it does not aver that they were tenants of the lessors at the date of the contract set up in * the plea, or that they then recognized or held under their title, or that they were then under any obligation to surrender the possession to them. And although it may have been intended that these facts should be inferred from the facts stated, yet as such inference is far from being necessary or conclusive, and is in truth little more than conjecture, it cannot be supposed that the Court will assume the facts necessary to make out the replication when they are neither stated nor necessarily implied. The pleading should state facts sufficient to constitute an answer to the preceding plea. But the sufficiency of this replication rests upon an uncertain inference, which not being stated as a fact, can give no strength to it.
There being then no error in adjudging the replication to be insufficient, the judgment for the defendants is right unless their plea, which is reached by the demurrer to the replication, is itself insufficient to defeat *341 the action. As the plea sets out the contract alleged to be champertous the averments relating to the nature and effect of that contract go for nothing. The contract speaks for itself and must be judged by its own terms. And there being no averment of any other agreement for instituting or carrying on the suit but that which is contained in the written contract, the sole question on the plea is whether upon its, face that contract is champertous. This question is we think virtually decided by the construction given to the written contract and to the statute in the case of Wilhite vs Roberts, (4 Dana, 172.) The contract in that case is contained in the following words: “Now if the said Rudd & Roberts shall succeed in recovering possession of said lot of ground on the demise aforesaid, then I oblige myself to pay them to the amount of one half of the value of the above mentioned ground.” The Court was of opinion that this was not an agreement to give “part or profit out of the thing in contest,” and therefore not champertous. And it was further said, in that case, that the litigant might regulate his attorney’s fee by the value or half of the value of the property in contest, as well as by the value of any other property.
A contract to* pay counsel a. fee equal to one-*fourth of the value of the land, which may he recoverediess by the costs of the-suit, and to wait until the land is. sold, isnotchamperlous within the provisions of the act of 1824.
The only material difference between the contract then before the Court and that now under consideration consists in the fact that in the present case the attorneys are to wait for their fee until the employers sell the land. All else relates merely to the quantum of the fee. And although the amount of the expenses and costs is to be deducted from the one fourth of the value of the land and the attorneys are to receive the residue only of the one fourth thus diminished, this residue constitutes their whole fee. The expenses, &c. are not to come out of their fee, nor to be paid by them, nor to be postponed until the land is sold. But the employers have to pay the expenses and costs as in other cases, and after reimbursing themselves out of one fourth of the value of the land when sold, the balance of the fourth is to be paid as a fee.
J. W. L. Harlan for plaintiffs? Lindsey and Robinson Sf Johnson for defendant.
The attorneys, it is true, are to wait until the land is sold by the employers before they are entitled to payment. But this is worse for them than if they could demand a fee equal to one fourth oí the value of the land, less the expenses, &c., immediately upon recovering it. And although thecontract implies that the employers may look to the sale of the land for the means of paying the fee, it does not give to the attorneys any specific right to the proceeds. And the reference to one fourth of the value of the land, is only for the purpose of measuring or ascertaining the fee.
The terms of the contract show that the fee was to be regulated by the value of the recovery compared in a certain manner with the costs and expenses. It does not show that the attorneys were to have part or profit out of the thing in contest, or that the contract was made in its actual form in order to secure to them such part or profit in evasion of the statute. The contract, therefore, is not, in our opinion, champertous within the statute, and .the plea should have been adjudged bad on the demurrer.
■ Wherefore, the judgment is reversed and the cause remanded with directions to render judgment against the sufficiency of the plea and for further proceedings.