# CASES

IN THE

# SUPREME COURT OF ILLINOIS.

## NORTHERN GRAND DIVISION.

### SEPTEMBER TERM, 1874.

CHARLES THOMPSON *et al.*

*v.*

JOSEPH S. REYNOLDS.

73 11
146 86

73 11
58a 578

73 11
171 121

73 11
179 574

73 11
e114a²489

1. CHAMPERTY—*a misdemeanor in this State.* Champerty being a misdemeanor at common law, and not being embraced in sec. 108 of the Criminal Code, is punishable in this State as such.

2. SAME—*contract tainted with, void.* A contract between an attorney and client, whereby the attorney is to institute and prosecute suits, at his own expense, for the recovery of property belonging to or claimed by the client, for which his only compensation is to be a portion of the property recovered, however honestly entered into and carried out, is champertous and void.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding.

Messrs. MERRIAM & ALEXANDER, for the appellants.

Mr. JOHN C. RICHBERG, for the appellee.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

Some time in the latter part of the year 1868, appellee and his partner were consulted by appellants as to whether they should execute a release, without consideration, of certain property mentioned in the deed. The partner advised that they had no interest, and could do so without prejudice to their rights; but, subsequently, another quitclaim deed was, in like manner, presented for a large amount of property. Appellee was then applied to for further advice, when he, with appellant Charles Thompson, consulted with one James Dunne, also an attorney, who occupied the same office with appellee. They investigated the matter, and arrived at the conclusion that appellants had an interest in the property.

An agreement was soon after entered into between appellants and appellee, by which appellee was to institute all necessary proceedings to ascertain and fix the rights of appellants; that he should pay all necessary expenses, and receive one-half of whatever should be realized. . Appellants agreed that they would do no act to interfere with the proceedings. It is claimed that, with the consent of the parties, appellee agreed with Dunne he should assist in prosecuting the claims, for which he was to receive one-half of appellee's moiety, being one-fourth of what should be recovered.

Soon after, proceedings were commenced in the circuit, the Superior and the county courts by these attorneys. During the continuance of these proceedings, it is claimed that about $10,000 was realized by appellants executing releases, by way of compromise, with several defendants to the various suits, and it is claimed that these proceeds were divided according to the terms of the agreement.

About the month of May, 1871, appellants, it is claimed, without the consent of appellee or of Dunne, terminated the several proceedings and conveyed the lands in litigation, in consideration of $7500, actually paid to them, and to recover one-half of that sum this action was brought. A trial by the

court and a jury was had, resulting in a verdict of $1500 in favor of plaintiff, on which a judgment was rendered and this appeal prosecuted.

A number of errors are assigned on the record, but in the view we take of the case, we shall only consider whether the judgment is against the law. The court was asked to instruct the jury that the agreement entered into was champertous and void, but the court below refused to give the instruction. Blackstone defines champerty (vol. 4, p. 155,) as " a species of maintenance, and punished in the same manner, being a bargain with a plaintiff or defendant *compum partire,* to divide the land or other matter sued for between them, if they prevail at law, whereupon the champerter is to carry on the party's suit at his own expense." The same author informs us that the punishment, if a common person, for champerty, was by fine and imprisonment—and this was a misdemeanor, punishable at the common law. See Hawk. Pleas of the Crown, vol. 1, p. 463. It was also prohibited by various ancient statutes, commencing as early as the Statute of Westminster 1, ch. 25, all of which enact heavy penalties for their violation.

It thus appears, that champerty was an offense at the common law, and our General Assembly having adopted the common law of England as the rule of decision, so far as applicable to our condition, until modified or repealed this must be regarded as in force in this State, as affecting all such contracts, and as being opposed to sound public policy. It is certainly applicable to our condition so far as it relates to attorney and client, and contracts with intermeddlers and speculators in apparently defective titles to property. If allowed to be practiced by attorneys, it would give them an immense advantage over a client. . The superior knowledge of the attorney of the rights of the client, would give him the means of oppression and acquiring great and dishonest advantages over the ignorant and unsuspecting owner of property. By giving false advice, the attorney, owing to the confidence his client reposes in him, and to his superior knowledge, would have the client completely at his mercy, and would thus be enabled to acquire the

14                  THOMPSON *et al. v.* REYNOLDS.          [Sept. T.

Opinion of the Court.

client's property in the most dishonorable manner.  To allow champerty would be to permit temptation to the avaricious and unscrupulous in the profession, that would, from the very nature of things, lead to great abuses and oppression.

Whilst the great body of the profession are honest, and understand and act on the duties devolving upon them, there necessarily must be, in this as in all ages of the past, some who gain admission that have neither the integrity nor sense of duty necessary to restrain them from dishonorable means in practice.  Usually a person will not employ an attorney unless he feels assured of his honesty as a man as well as his ability as an attorney.  Having this confidence, all must see at a glance that it would give the attorney immense power over the client, and with this power all must see that to permit him to make champertous contracts would be to place the client in the power of the attorney.  Professional duty requires that advice given should be honest, fair and unreserved; but where the weak in morals or the vicious are consulted, and they see and determine to embrace the opportunity to make a champertous contract, how can we expect them to give fair, honest and unreserved advice at the commencement, or in conducting the litigation? The just, the good and upright require no restraints, but the vicious or immoral should be freed from temptation.

At all times, in the past, champerty has been found a source of oppression and wrong to the property owner, and a great annoyance to the community.  To allow it to attorneys, with a portion, but it is believed the number would be small, there would be strong temptation to annoy others by the commencement of suits without just claim or right, merely to extort money from the defendant in buying his peace.  Such practices have been denominated as a crime *malum in se.*  And such extortion from others, or by the oppression of a client, is unquestionably a great moral delinquency, that no government regardful of the rights of its citizens should ever tolerate.  We see that it is as liable now to abuse as it ever was, and would be as injurious to our community as to other communities in the past.  And this court has repeatedly held that common

law misdemeanors may be punished in this State, unless abrogated by statutory enactment.

Then, has this common law offense been repealed? We think not. The General Assembly has defined the offences of barratry and maintenance, but the offense of champerty is not named; and as, at common law, all three of these offenses were regarded as separate and distinct, and as the British parliament enacted separate laws in reference to each, and as they were enforced by distinct proceedings, we may regard them as different offenses, although champerty is said to be a species of maintenance. Then, if the 108th section of the Criminal Code would not embrace this offense, it is in force as a common law misdemeanor, and we do not see that it does.

But, it is said that the case of *Newkirk* v. *Cone*, 18 Ill. 449, has determined that there is no law in this State against champerty, but this is manifestly a mistake. In that case there seems, at first, to have been a champertous agreement, but it was abandoned by the parties by mutual consent. Cone then went on and rendered services, and sued for professional services in prosecuting and defending causes, also for examining records in public offices, abstracting title to lands, drawing, copying and engrossing conveyances, deeds and writings, for journeys and purchasing lands, and for work and labor. Thus, it will be seen, that, although it may have been argued, the question of maintenance or champerty was not before the court, but simply whether an attorney may recover a fair compensation for professional services and labor performed as an agent, and it was held that a contract of hiring, for the purpose of investigating title, and making purchases, and rendering legal services in settling titles to land thus purchased, was legal, and the person employed could recover for such services. It is true that the court refer to the ancient common law and British statutes to show that the contract of the parties then before the court was not affected by them. It was also shown that our statute against maintenance did not embrace that contract. There, a person desiring to purchase lands employed an attorney to examine title, to give him an opinion as to its validity,

and when purchased to litigate against conflicting titles, which was held not to be maintenance. That case is essentially different from this, both in its facts and on principle, and for these reasons it can not be regarded as an authority in favor of appellee in this case.

This court has held in *Gilbert* v. *Holmes*, 64 Ill. 548, and *Walsh* v. *Shumway*, 65 Ill. 471, that similar contracts were tainted with champerty, and could not be enforced.

According to the doctrine of the case of *Scoley* v. *Ross*, 13 Ind. 117, there can be no question that this contract is champertous, according to the doctrine of the courts of this country. That case refers to and reviews a large number of American decisions on this question, and carries the doctrine to the full extent of the English rule.

It was the policy of the common law to protect persons from harassing and vexatious litigation. Hence, it would not permit a person having no interest in the subject matter of the litigation to intermeddle or to become interested in the suit of another, unless it was an attorney, who could only have and demand a fee for his services, and that not in a portion of the thing in dispute. In the absence of such a rule, great wrong would necessarily be inflicted on community.

On a consideration of all the authorities, we are clearly .of opinion that this contract, however honestly entered into and carried out, was void, and that the judgment of the court below should be reversed and the cause remanded.

*Judgment reversed.*