# Jenkins *et al. v.* Bradford.

## *Partition of Lands.*

1. A contract in which it is agreed that attorneys-at-law shall receive one-half of the land in litigation, for the services they may render in the suit, if it should be conducted to a successful termination is champertous ; and being against public policy is void.

APPEAL from the Chancery Court of Clay.

Heard before the Hon. NEIL S. GRAHAM.

Taul Bradford, James B. Martin and W. H. Isbell formed a partnership for the practice of law, under the name and style of Bradford, Martin & Isbell. They were employed as lawyers by one William H. Jenkins to defend him, indicted for murder in the Circuit Court of Clay county, in this State. For the payment of the fee agreed upon by the parties, Jenkins made a promissory note on the 29th of December, 1868, payable to the said firm twelve months after date ; and to secure the payment of the note at maturity, Jenkins executed a mortgage on land therein described.

On the 5th day of January, 1869, Jenkins employed Bradford, Martin & Isbell to file a bill of complaint against one M. H. Porter, for the purpose of enjoining and restraining him from foreclosing a mortgage on land, that had been executed by Jenkins to Porter. To compensate them for services to be rendered in this suit, if it should be conducted by them to a successful termination, Jenkins agreed to give them one-half of his interest in the land covered by the mortgage to Porter. At that time Jenkins had no deed of conveyance of the land so mortgaged; but he held a bond for titles executed by W. P. Chilton. On the back of the bond he made this endorsement :

"For value received I hereby transfer, assign and convey to Bradford, Martin & Isbell an undivided one-half interest in the lands mentioned in this bond, and direct William P. Chilton to make titles to them to said lands.

"W. H. JENKINS.

"January 5, 1869."

Both the criminal and civil suits were so successfully defended and prosecuted by Bradford & Martin (Isbell having withdrawn from the firm) that Jenkins was acquitted of the

charge of murder, and Porter was perpetually enjoined from foreclosing the mortgage. This decree was affirmed by the Supreme Court.

Jenkins delivered the land to Bradford, who held peaceable possession of it for the said partnership, and afterwards for himself, for some time. Afterwards Bradford, hearing that Jenkins had put a construction upon the agreement made on the fifth day of January, 1869, which differed from his own, drew up an explanatory agreement between Jenkins and Bradford & Martin (Isbell having withdrawn and surrendered his interest in the matter to the firm), which substantially embodied the contract already mentioned. This was signed on the third day of June, 1870.

Jenkins, and John T. Morgan, as the trustee of W. P. Chilton, on the 19th day of November, 1851, entered into an instrument of writing by which Morgan was empowered to sell the land for which the bond for titles had been given, and out of the proceeds to pay the notes made for the purchase-money. Subsequently Jenkins paid for the said lands and John T. Morgan and his wife, Cornelia G. Morgan, executed a quit-claim deed of the lands to Taul Bradford and William H. Jenkins on the 24th day of January, 1873. The said Chilton, before the date of this deed, had conveyed all his interest in the land to Morgan.

From the purchase of the interest in the said land by Bradford, Martin & Isbell, the said Jenkins continued to reside on the premises, and to cultivate as much of the cleared land as he desired, but he paid Bradford rent on a part of the land only for one year. A short time before Bradford filed his bill of complaint in the Chancery Court of Clay county; Jenkins disputed the right of Bradford to the said land, "interfered with the quiet enjoyment of his interest therein, and refused to allow him any proportion of the last year's rent for the land." He "cut down, unnecessarily, a large quantity of green timber on portions of said land, and threatened to clear other portions of it, to the great injury of the premises."

The firm of Bradford, Martin & Isbell has been dissolved during the litigation of Jenkins with Porter; and after its termination the firm of Bradford & Martin was also dissolved. Both Isbell and Martin relinquished to Bradford all of their right and interest in the fees evidenced by the contract, note and mortgage above described. The mortgage executed on the 29th day of December, 1868, by Jenkins to Bradford, Martin & Isbell, em-

[Jenkins v. Bradford.]

braced also that part of his property which was transferred to the said firm by the agreement dated January 5th, 1869.

On the 8th day of February, 1873, Taul Bradford filed a bill of complaint in the Chancery Court of Clay county against William H. Jenkins and Mrs. Elvira Chilton—the widow of the said William P. Chilton. The complainant prayed that the land which was ordered to be conveyed to the firm of Bradford, Martin & Isbell by the agreement of January 5th, 1869, should be sold, and that a title should be made to the purchaser; that an account should be stated between Jenkins and Bradford, and that after the allowance to Bradford of what was justly due to him, the proceeds should be divided between Jenkins and himself. He prayed, also, that Jenkins might be enjoined from the commission of waste, and that "a receiver might be appointed to take charge of and superintend the premises, and to receive the rents, incomes and profits thereof, until the final hearing of the cause."

Subsequently, Taul Bradford filed and amended bill of complaint against the same defendants, and sought thereby also to foreclose the mortgage given to secure the payment of the note dated the 29th day of December, 1868. In the amended bill the complainant prayed that the said promissory note might be decreed to be paid out of the proceeds only arising from the sale of the half-interest owned by Jenkins in the land described in the bond for titles, and which subsequently was conveyed by Morgan to Bradford and Jenkins. Jenkins alleged, in his answer, that the mill tract of land embraced in the mortgage was sold, with the knowledge and consent of Bradford, to Arch. Carter, from whom Jenkins had previously purchased it.

A writ of injunction, restraining Jenkins from the commission of waste, &c., was granted. And on the final hearing of the case, the court "adjudged that the complainant" was "entitled to the relief he" prayed "for in his bill of complaint as amended."

JOHN T. HEFLIN, for appellant.

WALDEN & BISHOP, for appellee.

STONE, J.—The extreme views, sought to be established in defence of this suit, are not sustained by the weight of the evidence. But, independently of that question, on a principle of public policy which has long been an inexorable

[Bibb v. Hawley.]

rule of law, the bill in this case must fail, so far as it seeks partition, and a recovery of one-half the lands. That feature of the case comes directly within the rule against champerty.—*Holloway v. Lowe*, 7 Por. 488; *Dumas v. Smith*, 17 Ala. 305; *Byrd v. Odem*, 9 Ala. 755; *Wheeler v. Pounds*, 24 Ala. 472. And what is called the renewed, or explanatory contract, must likewise fall.—*Lecott v. Sallee*, 3 Por. 115; *Dickinson v. Bradford*, at the present term.

The bill as amended contains equity, so far as it avers, and seeks to foreclose the mortgage made to secure the note for five hundred dollars. The defence admits the justness of that claim. The condition of the record, however, renders it improper that we should here pronounce a decree of foreclosure. The answer of Jenkins sets up that, with the knowledge and consent of Bradford, he, Jenkins, had sold the mill tract to Carter. The mortgage to Bradford conveys the mill tract as well as Jenkins' home tract. Unless the bill is so amended as to abandon claims to the mill tract, its claimant should be made a party defendant.

Reversed and remanded at cost of appellee.