## COURTRIGHT *v.* BURNES.

*(Circuit Court, W. D. Missouri, W. D.   November, 1881.)*

1. CHAMPERTY—AS A DEFENSE.

The fact that there is a champertous and illegal contract between plaintiff and his attorney for the prosecution of a cause of action is no ground of defense to the action, and can only be set up by the client against the attorney when the champertous agreement itself is sought to be enforced.

2. CONTRACT—PAROL EVIDENCE.

Parol testimony of a contemporaneous agreement is not admissible to contradict or vary the terms of a written contract.

3. SAME—DEFENSE OF WANT OF CONSIDERATION.

The defense of want of consideration may ordinarily be made at law; but when a determination of the question of consideration depends upon the settlement of the affairs of a partnership, some of the members of which are not before the court, it is a question for equitable jurisdiction.

Action upon a promissory note for $7,333, executed by defendant to one F. H. Winston, and by him transferred, after maturity, to the plaintiff.

Besides a general denial the defendant answers as follows:

"For further answer to said petition, says that before and at the time of the making of the pretended note in said petition described, said plaintiff, this defendant, and F. H. Winston and George C. Campbell had been and were partners in a contract for building a railroad to a point opposite the city of Atchison, Kansas, from a point on the Chicago & Southwestern Railroad, which road was known as the Atchison branch of the Chicago & Southwestern Railroad. Prior to the date of said pretended note said Winston had been in charge of the construction of said branch road for said partners under said contract, and

had received, and then had in his possession, as part of the assets under such contract, 40 bonds of the city of Atchison, for the sum of $1,000 each, belonging to said parties, subject to the payment of the partnership debts, and a distribution among said parties after such payment in proportion to their respective interests therein. Shortly before said pretended note was made, said parties made, constituted, and appointed this defendant as trustee for said partners, to take charge of said partnership business in place of said Winston, and to wind up said business; that at the time of making said pretended notes said partnership had not been settled, nor is it yet settled, nor has the interest of said Winston in said partnership, or in said bonds, been ascertained; that at the time of making said pretended note Winston turned over to this defendant, as trustee of said partnership as aforesaid, said bonds and other assets in his hands belonging to said partnership, with the consent of said partners, and for the benefit of said partnership; that at the time said Winston turned over to defendants said bonds and assets, said Winston estimated that there would be due him as a partner as aforesaid, upon the final settlement of said partnership, a considerable sum of money arising from said bonds or their proceeds, and he estimated that sum at the amount of said pretended note; that there having been no settlement of said business, said Winston and this defendant considered said estimate as a mere conjecture, depending upon the debts due said partnership, and the result of said settlement. Said Winston therefore requested this defendant, as the trustee of said partners, of whom plaintiff was one, to make said note, with the understanding that the same was not to be sued on, but was to be deemed a mere memorandum of the amount that should be estimated as the share of said Winston on account of said bonds on a settlement among said partners. Defendant executed said pretended note with such understanding between said Winston and himself as trustees of said partnership, and not as the separate note of this defendant. Said pretended note, so executed, was assigned by said Winston for the benefit of plaintiff to one G. W. De Camp, and by said De Camp to plaintiff, without any consideration from said De Camp to Winston, nor from said plaintiff to De Camp, and with full knowledge by said De Camp and plaintiff of said facts relating to said note, and that such were made long after the time at which said note was due, as appeared on its face, and upon the further consideration and agreement between said De Camp and plaintiff and Winston that this defendant should not be sued upon said note, and this defendant says that said note was and is wholly without consideration, and is null and void, and that said note is based upon and grew out of transactions relating to business of said partners; that said partners are interested in the same, and are necessary parties to a suit relating to said note, and the amount due upon said note, if any, cannot be ascertained until a final settlement of said partnership can be had.

"For further answer to said petition said defendant says said plaintiff ought not to have or maintain his said action, because he says that said action was instituted and is being prosecuted under an agreement between plaintiff and George W. De Camp, his attorney, by which said De Camp agrees to prosecute such suit, and to bear all the expenses incident to the prosecution of the same,

in consideration that said De Camp shall receive a portion of the amount to be recovered in such suit, to-wit, four-tenths of the amount so recovered, which said agreement is illegal, and against public policy and good morals. Defendant, therefore, asks to be discharged with his costs."

This case was tried before the court by agreement of parties, a jury being waived.

*Botsford & Williams* and *G. W. De Camp,* for plaintiff.

*Willard P. Hall, Silas Woodson, Benj. F. Stringfellow,* and *L. H. Waters,* for defendant.

McCRARY, C. J. The answer alleges that this suit is being prosecuted by one of the attorneys for plaintiff upon a champertous contract by which he is to pay the expenses of the litigation and receive as his compensation 40 per cent. of the sum realized, and the defendant moves to dismiss the suit for that reason. The proof sustains the allegation of champerty, the testimony of the defendant himself being quite conclusive upon that point. This makes it necessary for the court to decide the important question whether the plaintiff can be defeated in his action upon the note by the proof that he has made a champertous contract with his attorney. In other words, can the defendant, the maker of a promissory note, avoid payment thereof or prevent a recovery thereon upon the ground that the holder of the note has made a void and unlawful agreement with an attorney for the prosecution of a suit upon it.

The authorities upon this question are in conflict. Some courts have ruled that if the fact that a suit is being prosecuted upon a champertous contract comes to the knowledge of the court in any proper manner it should refuse longer to entertain the proceeding. *Barker* v. *Barker,* 14 Wis. 142; *Webb* v. *Armstrong,* 5 Humph. 379; *Morrison* v. *Deaderick,* 10 Humph. 342; *Greenman* v. *Cohee,* 61 Ind. 201.

Other courts have held that the fact that there is an illegal and champertous contract for the prosecution of a cause of action is no ground of defense thereto, and can only be set up by the client against the attorney when the champertous agreement itself is sought to be enforced. *Hilton* v. *Woods,* L. R. 4 Eq. Cas. 432; *Elborough* v. *Ayres,* L. R. 10 Eq. Cas. 367; *Whitney* v. *Kirtland,* 27 N. J. Eq. 333; *Robinson* v. *Beall,* 26 Ga. 17; *Allison* v. *Railroad Co.* 42 Iowa, 274; *Small* v. *Railroad Co.* 8 N. W. Rep. 437.

This latter view is in my judgment supported by the better reason. It is not necessary for the full protection of the client to go so far as to dismiss the suit, for he is in no manner bound by the champertous

agreement; nor are there any reasons founded on public policy that should require such dismissal. If all champertous agreements shall be held void, and the courts firmly refuse to enforce them, they will thereby be discouraged and discountenanced to the same extent and in the same manner as are all other unlawful, fraudulent, or void contracts. If, on the other hand, the defendant in an action upon a valid and binding contract may avoid liability or prevent a recovery by proving a champertous agreement for the prosecution of the suit between the plaintiff and his attorney, an effect would thus be given to the champertous agreement reaching very far beyond that which attaches to any other illegal contract. The defendant in such case is no party to the champerty; he is not interested in it, nor in anywise injured by it. If the contract upon which he is sued is a *bona fide* contract, upon which a sum of money is due from him to the plaintiff, and he has no defense upon that contract, I can see no good reason for holding that he may be released by showing that the plaintiff has made a void and unlawful agreement with his attorney concerning the fee and expenses of the suit.

The tendency in the courts of this country is stronger in the direction of relaxing the common-law doctrine concerning champerty and maintenance, so as to permit greater liberty of contracting between attorney and client than was formerly allowed, and this for the reason that the peculiar condition of society which gave rise to the doctrine has in a great measure passed away. In some of the states the common-law rule is altogether repudiated, and it is held that no such contract is now invalid unless it contravenes some existing statute of the state. *Sedgwick* v. *Stanton,* 14 N. Y. 289; *Voorhees* v. *Darr,* 51 Barb. 580; *Richardson* v. *Rowland,* 40 Conn. 572; *Mathewson* v. *Fitch,* 22 Cal. 86; *Hoffman* v. *Vallejo,* 45 Cal. 564; *Lytle* v. *State,* 17 Ark. 609.

The common-law doctrine, however, prevails in Missouri, according to the decision of the supreme court of the state in *Duke* v. *Harper,* 66 Mo. 55. While following that ruling, I am disposed, in view of the general tendency of American courts, to relax somewhat the rigor of the English rule, to apply it only to the champertous contract itself, and not to allow debtors to make use of it to avoid the payment of their honest obligations.

It follows that the defense of champerty in this case cannot be maintained, and that the motion to dismiss must be overruled.

This brings us to the consideration of the case upon its merits. The first defense, as set forth in the answer, is, in substance, that the

note sued on was not intended to bind the defendant to pay the sum therein named 30 days after date, as appears from the face, but was intended as a mere memorandum to show that Winston, the payee, claimed an interest amounting to $7,333 in certain bonds turned over by him to defendant, and for which defendant was to account to him in the settlement of certain partnership affairs. In other words, it is claimed that the note sued on was not intended to be a promissory note, and was not to be sued upon or paid as such, but was to be held by the payee as a memorandum, not of any fact or agreement stated therein, but of an understanding wholly inconsistent with and repugnant to its terms. The note is in the usual form of a negotiable promissory note. The alleged understanding or agreement relied upon by defendant is not in writing, and the proof of it, so far as there is any proof, is in the parol testimony of the defendant. The testimony of Winston, the other party, is directly in conflict with that of the defendant, and if it were necessary to decide the question of fact, I should feel bound to say that Winston's statements, corroborated and confirmed as they are by the writing itself, made at the very time of the contract, and, presumably, embodying the understanding of the parties, would prevail over the testimony of the defendant. But it is not necessary to decide this question, because it is perfectly clear that all parol testimony to show a contemporaneous agreement in conflict with the plain terms of the note must be rejected. The rule which excludes such testimony is fundamental and elementary, and its application to this defense is too apparent to require argument or the citation of authorities. The contract signed by the defendant plainly declares that he is for value received to pay a given sum of money within a definite time, and to admit parol proof to show the fact relied upon by the defense would not only vary the terms of the instrument, but would flatly contradict and nullify every material provision it contains.

The evidence was, however, received, and may, perhaps, be considered as tending to support the other defense set up in the answer, which is that the note was without consideration. To establish this defense the defendant has attempted to prove—*First,* that the note was given to represent the interest of Winston in certain bonds which belonged to a partnership of which plaintiff and defendant, as well as Winston, were members, and which were at the date of the note turned over by Winston to the defendant; and, *second,* that said Winston had, in fact, no interest in said bonds, because he had previously drawn

from the partnership assets more than he would be entitled to upon a settlement of the partnership affairs. Ordinarily the defense of want of consideration may be made at law, but is such the case when a determination of the question of consideration depends upon the settlement of the affairs of a partnership, some of the members of which are not before the court? Even if this were an open question, I should not hesitate to hold that the defendant must resort to a court of equity for relief. But it is not an open question. It seems that defendant, acting upon the theory that his remedy was in equity, filed his bill in chancery in this court setting forth substantially the facts found in his answer in this case, and praying an injunction to restrain the plaintiff from prosecuting this action at law. The bill was demurred to, and the application for the injunction was resisted in this court at the last term.

Upon full argument it was held by this court that the defense to the note upon the facts stated in the bill should be made in equity. Mr. Justice Miller, in delivering the opinion of the court, said: "As to the general fact that equity has jurisdiction of the case, and that the transactions ought to be settled in equity without going to law, we have no question." And again: "The whole question can and ought to be settled in a court of equity, and we have no hesitation in overruling the demurrer as a general demurrer." Notwithstanding this decision the defendant saw fit to dismiss his bill in chancery, and to make his defense at law in this case. I must hold that want of consideration for the note, if it can be shown at all, can only be shown on a settlement of the partnership affairs between Burnes, Courtright, Winston, and others, who were interested in the contract for the construction of the railroad named in the answer, and that a court of law is not competent to supervise such settlement. It is argued that the evidence before the court in this case shows that upon such a settlement it would appear that Winston had no interest in the bonds for which the note was given. But I cannot assume that the other members of the partnership, who are not here, would not be able, if brought into a court of equity, to make other and further proof. I cannot take it for granted that Winston would be unable to show that he had an interest in said bonds if the opportunity was afforded him. I have, in considering the defense of want of consideration, assumed that the note sued on was given by defendant for the interest of Winston in the bonds above named, and was to be settled upon a settlement of the partnership affairs, and not to be a charge against the defendant personally. But whether this assumption is in

accordance with the facts I do not decide. The testimony upon the question is quite conflicting, and it is not necessary to decide it, because, in any view of the case, the plaintiff has a right to recover at law upon the note, whether it was executed to Winston to hold in trust for others, or for his own use and benefit. *Sturges* v. *Swift*, 32 Miss. 239 ; *Anderson* v. *Robertson*, Id. 241; *Gibson* v. *Moore*, 6 N. H. 547.

Judgment for plaintiff for the amount of the note and interest.

## NOTE.

§ 1. GENERAL STATE OF THE LAW CONCERNING CHAMPERTY IN THE UNITED STATES. In the foregoing opinion the learned judge aptly draws attention to the fact that the common-law rules with regard to champerty and maintenance have been greatly relaxed in many of the American states, and in others repudiated altogether. Confining our attention to the subject of champerty, which is a species of unlawful maintenance, we shall find that the common-law rules and the early English statutes relating to this offense are not in force in Arkansas,(*a*) California,(*b*) Connecticut,(*c*) Delaware,(*d*) New Jersey,(*e*) Texas,(*f*) and, it seems, Vermont.(*g*) On the other hand, these rules are held to be in force in Alabama,(*h*) Georgia,(*i*) Illinois,(*j*) Indiana,(*k*) Iowa,(*l*) Kentucky,(*m*) Massachusetts,(*n*) Missouri,(*o*) Ohio,(*p*) Rhode Island,(*q*) Tennessee,(*r*) and Wisconsin.(*s*) In New York the subject is covered by elabo-

---

(*a*) Lytle v. State, 17 Ark. 608, 670.

(*b*) Mathewson v. Fitch, 22 Cal. 86, 94; Hoffman v. Vallejo, 45 Cal. 564; Ballard v. Carr, 48 Cal. 74; Howard v. Throckmorton, Id. 483; Mahoney v. Bergin, 41 Cal. 423.

(*c*) See Richardson v. Rowland, 40 Conn. 565, 572; Stoddard v. Mix, 14 Conn. 24.

(*d*) Bayard v. McLane, 3 Harr. (Del.) 139, 216.

(*e*) Schomp v. Schenck, 40 N. J. L. 195.

(*f*) Bentinck v. Franklin, 38 Tex. 458; White v. Gay, 1 Tex. 384; McMullen v. Guest, 6 Tex. 275; Carder v. McDermott, 12 Tex. 553. See Clark v. Koehler, 32 Tex, 684; Hill v. Cunningham, 25 Tex. 25.

(*g*) Danforth v. Streeter, 28 Vt. 490; Edwards v. Parkhurst, 21 Vt. 472. But compare Stacy v. Bostwick, 48 Vt. 192.

(*h*) Jenkins v. Bradford, 59 Ala. 400; Holloway v. Lowe, 7 Porter, 488; Dumas v. Smith, 17 Ala. 305; Byrd v. Odem, 9 Ala. 755; Wheeler v. Pounds, 24 Ala. 472. Compare Walker v. Cuthbert, 10 Ala. 213. 219.

(*i*) Ga. Code, 1873, § 2750; Meeks v. Dewberry, 57 Ga. 263. Compare Stansell v. Lindsay, 50 Ga. 360; Robison v. Beall, 26 Ga. 17.

(*j*) Thompson v. Reynolds, 73 Ill. 11, (explaining Newkirk v. Cone, 18 Ill. 449 ) Compare Fetrow v. Merriwether, 53 Ill. 275, 279; Gilbert v. Holmes, 64 Ill. 548; Walsh v. Shumway, 65 Ill. 471.

(*k*) Scobey v. Ross, 13 Ind. 117; Quigley v. Thompson, 53 Ind. 317. See, as to deeds of land

adversely held, Fite v. Doe, 1 Blackf. 127 ; Martin v. Pace, 6 Blackf. 99 ; Galbreath v. Doe, 8 Blackf. 366 ; Leslie v. Slusher, 15 Ind. 166 ; German Mutual Ins. Co. v. Grim, 32 Ind. 249, 257.

(*l*) Boardman v. Thompson, 25 Iowa, 487, (overruling Wright v. Meek, 3 G. Greene, 472;) Adye v. Hanna, 47 Iowa, 264; S. C. 29 Am. 484. See Cooley v. Osborne, 50 Iowa. 526.

(*m*) By statute. See Rust v. Larue, 4 Litt. 411, 417 ; Davis v. Sharron, 15 B. Mon. 64, 68 ; Harman v. Brewster, 7 Bush. 355.

(*n*) Thurston v. Percival, 1 Pick. 415; Lathrop v Amherst Bank, 9 Met. 489. As to deeds of land adversely held, Sweet v. Poor, 11 Mass. 549; Brinley v. Whiting, 5 Pick. 348.

(*o*) Duke v. Harper, 66 Mo. 51, (reversing S. C 2 Mo. App. 1.)

(*p*) Key v. Vattier, 1 Ohio, 59. Compare Spencer v. King, 5 Ohio, 182.

(*q*) Martin v. Clarke, 8 R. I. 389; Orr v. Tanner, 12 R. I. 94.

(*r*) By statute. Floyd v. Goodwin, 8 Yerg. 481; Weedon v. Wallace, Meigs, 2-6; Webb v. Armstrong, 5 Humph. 379; Morrison v. Deaderick, 10 Humph. 342; Hunt v. Lyle, 8 Yerg. 142; Cross v. Bloomer, 6 Bax. 74.

(*s*) Barker v. Barker, 14 Wis. 131; Miller v Larson, 19 Wis. 463; Martin v. Vedder, 20 Wis. 466; Stearns v. Felker, 28 Wis. 594; Allard v. Lamirande, 29 Wis. 502.

rate and carefully-drawn statutes.(*t*) These statutes have been generally held to be a complete substitute for the early British statutes, and the rules of the common law upon the subject of maintenance and champerty.(*u*) The ordinary species of champerty, which consists in an attorney supporting his client's suit at his own expense upon an agreement to receive for his compensation a part of the money or thing recovered in the event of success, and nothing in the event of failure, is not within these statutes, and is not unlawful in that state.(*v*) It has been held by the supreme court of the District of Columbia that the common-law rule as to champerty, as relaxed by the modern decisions, is in force in that district.(*w*)

§ 2. DISAGREEMENT AMONG THE COURTS AS TO WHAT CHAMPERTY IS. One of the most striking commentaries upon the subject of champerty is found in the fact that the decisions of the courts which recognize the common-law rules on the subject as being in force, are at utter variance as to what those rules are. The difference of opinion relates principally to the question whether the gist of the common-law offense of champerty is the unlawful maintenance of another's suit, or the mode in which the maintenor is to receive compensation. According to the former class of cases the gist of the offense consists in the unlawful intermeddling with, and the support of another man's lawsuit, without reference to the manner in which the intermeddler is to be paid for his trouble, or whether he is to be paid at all. The latter decisions do not consider whether the maintenor is an intermeddler, or whether he stands in such a relation to the litigation that he may lawfully support the suit; but they look chiefly to the mode in which he is to receive his compensation; and, if he is to get for his pains a part of the land, money, or other thing recovered, it is champerty, and unlawful. Applying these distinctions to the case of contracts between attorney and client, and considering that it is not unlawful for an attorney to render profesional assistance to a client, it results that, in the opinion of the courts which hold the former doctrine, in order to constitute champerty the attorney must not only have an agreement with his client, whereby the attorney is to get a part of the money or thing recovered, but the attorney must also support at his own expense, and take all the risks of, the litigation; while, in the opinion of the latter courts, it is champerty if he merely render his services as attorney upon an agreement to get a part of the money or thing recovered, without advancing any of the expenses of the litigation, or without indemnifying his client against costs and expenses. This difference of opinion would not excite so much attention if it originated in the American decisions; but it will be found that it has its origin in a difference of opinion among the most eminent authorities upon the common law. Lord Coke and Mr. Sergeant Hawkins are authorities for the former view, while

(*t*) See the "New York Code of Remedial Justice." This Code is chapter 448 of the Session Laws of 1876. Attention is directed to sections 73, 74, 75, 76, and 77. See, also, the "Penal Code of New York," (chapter 676, Session Laws 1881,) §§ 130–142, inclusive.

(*u*) Se-lgwick v. Stanton, 14 N. Y. 289; Mott v. Small, 22 Wend. 425; Hoyt v. Thompson, 5 N. Y. 347, per Paige, J.; Ogden v. Des Arts, 4 Duer, 275,

283, per Oakley, C. J.; Richardson v. Rowland, 40 Conn. 565, (construing the New York law.)

(*v*) Sedgwick v. Stanton, 14 N. Y. 2 9; Looney v. Second Ave. R. Co. 18 N. Y. 369; Ely v. Cooke, 28 N. Y 365; Benedict v. Stewart, 23 1 arb. 420; Coughlin v. New York, etc., R. Co. 8 Hun, 136; Richardson v. Rowland, 40 Conn. 465. Compare Dawley v. Brown, 79 N. Y. 390, (reversing S. C. 9 Hun, 461.)

(*w*) Stanton v. Haskins, 1 McArthur, 558.

those American courts which have adopted the latter view have appealed for support to the texts of Sir William Blackstone and Mr. Chitty. This will appear from the following quotations from these eminent writers: First, it is said by Lord Coke that "to maintain to have part of the land, or anything out of the land, or part of the debt, or other thing in plea or suit, and this is called *cambi-partia*—champerty."(*a*) So Sergeant Hawkins defines champerty as "the unlawful maintenance of a suit in consideration of some bargain to have part of the thing in dispute, or some profit out of it."(*b*) On the other hand, Mr. Chitty says that "champerty is the purchasing a suit or right of action of another person; or, rather, it is a bargain with a plaintiff or defendant to divide the land or other matter between them if they prevail at law, *whereupon the champertee is to carry on the party's suit at his own expense.*"(*c*) And the definition of Mr. Justice Blackstone is substantially the same: "A bargain with a plaintiff, or defendant, *campum partire*, to divide the land or other matter sued for between them, if they prevail at law; *whereupon the champertor is to carry on the party's suit at his own expense.*"(*d*) It is thus seen that both Lord Coke and Mr. Sergeant Hawkins omit from their definitions the element that the champertor (or champertee, as Mr. Chitty has it) is to maintain the party's suit at his own expense.

Contracts between attorney and client by which the former agrees, in consideration of having a part of the money or thing recovered, to support, at his own expense, the litigation of the latter,(*e*) or to indemnify the latter against costs and charges,(*f*) are universally regarded as being within the prohibition of the ancient common law against champerty, and also of the early English statutes, which were merely in affirmance of the common law. But it is where the attorney does not undertake to support the litigation at his own expense, or to indemnify the client against costs and charges, but merely agrees to render the ordinary services of an attorney in consideration of receiving a percentage of the money, or a part of the thing recovered, that the disagreement among the courts arises as to whether the contract is unlawful. In Alabama (*g*) and the District of Columbia(*h*) it is held that it is. In Wisconsin,(*i*) Georgia,(*j*) Louisiana,(*k*) Missouri,(*l*) and one of the circuit courts of the United States,(*m*) it is held that it is not.

§ 3. MERE AGREEMENTS FOR CONTINGENT FEES do not seem to come within any of the ideas of champerty to be found in the books, if we except

(*a*) Co. Litt. 368*b*.

(*b*) 2 Hawk. P. C. 463, § 1, (Curw. Ed.)

(*c*) 2 Chit. Cont. (11th Am. Ed. 996.)

(*d*) 4 Bl. Comm. 135.

(*e*) Martin v. Clarke, 8 R. I. 389; Boardman v. Thompson, 25 Iowa, 487; Coleman v. Billings, 89 Ill. 183; Meeks v. Dewberry, 57 Ga. 263; Thompson v. Reynolds, 73 Ill. 11; Weakly v. Hall, 13 Ohio, 167; Coquillard v. Bearss, 21 Ind. 479; Orr v. Tanner, 12 R. I. 94; Stevens v. Bagwell, 15 Ves. 139; Slade v. Rhodes, 2 Dev. & Batt. Eq. 24; Grell v. Levy, 16 C. B. (N. S.) 73; S. C. 10 Jur. (N. S.) 210; Thurston v. Percival, 1 Pick. 415; Key v. Vattier, 1 Ohio, 59.

(*f*) Adye v. Hanna. 47 Iowa, 264; S. C. 29 Am. 484. Compare Harrington v. Long, 2 Mylne & K.

590; Knight v. Bowyer, 2 De Gex & J. 445; Hunter v. Daniel, 4 Hare, 420; Tilton v. Gleed, 33 Vt. 405; Knight v. Sawin, 6 Me. 361.

(*g*) Holloway v. Lowe, 7 Porter, 488; Elliott v. McClelland, 17 Ala. 206.

(*h*) Stanton v. Haskins, 1 McArthur, 558.

(*i*) Ryan v. Martin, 16 Wis. 57, (overruling, it seems, on this point, Barker v. Barker, 14 Wis. 131;) Allard v. Lamirande, 29 Wis. 502.

(*j*) Moses v. Bagley, 55 Ga. 283.

(*k*) Martinez v. Succession of Vives, 32 La. Ann. 305; Flower v. O'Connor, 7 La. 207.

(*l*) Duke v. Harper, 66 Mo. 51.

(*m*) Maybin v. Raymond, 15 N. B. R. 353, per Woods, J.

the decisions in Tennessee, all of which were rendered under a peculiar statute. It is to be implied from the word itself that there can be no champerty without an agreement to divide the fruits of the legal contest, although, of course, there may be unlawful maintenance without such an agreement. Accordingly, it is laid down by the supreme court of the United States that agreements to pay contingent compensation for professional services of a legitimate character before the courts or departments of the government of the United States, or commissions appointed under treaties to examine claims, are not in violation of any rule of law or of public policy.(n) Carrying out this idea, one court takes a distinction between contracts where the attorney is to have · for his compensation a part of the land, money, or other thing recovered, and contracts where he is to have a sum of money equal in value to a specified part of the land, money, or other thing recovered. The former are regarded as champertous, the latter are not.(o)

§ 4. CHAMPERTOUS CONTRACTS BETWEEN PLAINTIFF AND HIS ATTORNEY NO DEFENSE TO AN ACTION. The principal interest in the foregoing decission lies in the ruling that, although a suit may be prosecuted in pursuance of a champertous bargain between a plaintiff and his attorney, it does not lie in the mouth of the defendant to set up that fact for the purpose of avoiding the payment of an honest debt, or escaping a just liability. There is no doubt whatever of the correctness of this ruling. After having given attentive study to all the cases I could find in the books on this subject of champerty and maintenance, I affirm with considerable confidence that there is *but one case* where the contrary principle has been *decided*, and that is the case of *Barker* v. *Barker*.[*] This case, and two or three others which may be found, where the same conclusion is intimated though not decided, involve a judicial aberration, which was produced by following a similar rule found in some Tennessee cases, overlooking the fact that those cases, in so deciding, merely gave voice to the mandate of a highly penal statute peculiar to that state, which requires the court, on it appearing that a suit is being prosecuted under a champertous bargain between the plaintiff and his attorney, or other person, to dismiss the suit.[†] So far as I know, there is no similiar statute in England or in any state of the Union. The case of *Greenman* v. *Cohee*,[‡] which the learned judge cites in the principal case as so holding, does not *decide* any question relating to the subject of champerty. There was, indeed, an attempt to thrust this question into that case; but the court decided nothing upon the point, because it had not been raised by the proper exception in the court below. What is said upon the subject is purely an extrajudicial *dictum*, and it so purports to be. It is noticeable that the court cite, in support of this *dictum*, the Wisconsin case of *Barker* v. *Barker*, *supra*, and the Tennessee cases cited in that opinion; and the same could be shown with regard to two or three other American cases which contain similar *dicta*. It thus appears that all the cases to be found, where this singular rul-

(n) Stanton v. Embrey, 93] [U. S. 548, 556; Wright v. Tebbitts, 91 U. S. 252; Wylie v. Coxe, 15 How. 415.

(o) Evans v. Bell, 6 Dana, 479 ; Ramsey v. Trent, 10 B. Mon. 336 ; Wilhite v. Roberts, 4 Dana, 172.

* 14 Wis. 131.

† Thomp. & Steig. Tenn. St. § 1783. See Douglass v. Wood, 1 Swan, 393, 395; Dowell v. Dowell, 3 Head, 502.

‡ 61 Ind. 201.

ing is made, take root in a local statute in Tennessee. In all the courts which have not fallen into this error, the contrary has been ruled wherever the question has been presented, so far as I can find. In a case decided in Massachusetts in 1827,(*p*) it was said that no precedent could be found showing that maintenance could be pleaded in bar to an action for the recovery of land, though it was also said that no precedent could be found showing that such a plea was bad. In one of the English cases cited in the principal case,(*q*) it was admitted that, in an action at law, the fact that the plaintiff was being illegally assisted would, if pleaded, be no defense. In another English decision,(*r*) cited in the principal case, a suit for the recovery of an interest in land was being prosecuted under a bargain between the plaintiff and his solicitor, which exhibited the worst species of champerty. The plaintiff did not know that he had any title, until a mousing solicitor informed him of it, and agreed to prosecute the suit for recovery, and to indemnify him against costs and expenses, in consideration of receiving an agreed part of the value of the property recovered. This fact was brought out upon a cross-examination of the plaintiff, who testified as a witness in the case. Upon this ground *Sir Richard Malins*, V. C., was pressed to dismiss the suit; but he refused to do so, saying that he could find no precedent in the books for such a course. In another modern English case in equity, which was a suit to recover certain annuities, it was held, on like grounds, that it was no defense that some of the annuities had been assigned, pending an action respecting their title, upon a promise to indemnify the vendor against the future costs of the litigation.(*s*) The St. Louis court of appeals has also held, in recent cases, that such a defense cannot be made to an action.(*t*)

An interesting application of this rule is also found in the case of the selling of a pretended title to land, contrary to the statute of Hen. VIII.,(*u*) and contrary to the common-law rule, of which this statute has been held merely declaratory. Here the rule is, that if A. is sued by B. for the recovery of land, it is no defense for A. to plead and prove that, before the commencement of the suit, B., being out of possession, had made a conveyance of the land to a third party, and that he was prosecuting the present suit in his own name, under an arrangement with such third party, and at the charges and for the benefit of the latter. The reason is that the conveyance to the third party is void, because unlawful. It does not convey a title to the third party which he can assert against the tenant in possession, nor does it divest the title of the grantor. It is a violation of law which may expose the plaintiff to a penalty, but it furnishes no reason why the defendant should keep the plaintiff's land, if the title is really in the plaintiff. Such a plea is merely equivalent to saying this: "It is true that the plaintiff has title, as he declares, but, nevertheless, he ought not to recover possession, because he has attempted to part with his title, and that under circumstances which render his conveyance unlawful, and hence null and void."(*v*)

(*p*) Brinley v. Whiting, 5 Pick. 348.

(*q*) Elborough v. Ayres, L. R. 10 Eq. 367,

(*r*)Hilton v. Woods, L. R. 4 Eq. 432.

(*s*) Knight v. Bowyer, 2 De Gex & J. 421, 444.

(*t*) Bent v. Priest, 10 Mo. App. 543; Million v. Ohnsorg, Id. 432.

(*u*) St. 32 Hen. VIII. c. 9.

(*v*)Brimley v. Whiting, 5 Pick. 348, 354; Williams v. Jackson, 5 Johns. 500; Wolcot v. Knight, 6 Mass. 418, 421; Redman v. Sanders, 2 Dana, 68.

The more this subject is looked into, the more the absurdities which attend the contrary view accumulate. For instance, it is said that the plaintiff has parted with his title under an agreement which is void for maintenance; that the plaintiff is a nominal party only; that the action is really prosecuted by the plaintiff's grantee in this void deed, using the plaintiff's name, in pursuance of an unlawful bargain between them; and that, if this is allowed to proceed, the effect will be that the law will lend its aid to the parties to an illegal transaction, to consummate and carry into effect what they have agreed to do, contrary to law. These arguments certainly strike the mind with great force; but the best way to judge of them is to consider the result to which they lead, and, at the same time, the result which is reached by taking the contrary view. They lead to the absurd result that the plaintiff, by attempting, contrary to law, to convey his land to a third party, not only does not convey it to such third party, but conveys it to the defendant, to whom he never intended to convey it, and who may be a mere disseizor, without even color of title. This would add a new penalty to an attempt, by a party out of possession, to convey land, and one which is not prescribed by the statute of Hen. VIII., nor by any rule of the common law. But if the contrary view is adopted, it will result that the plaintiff, if he really had the title at the time when he was disseized by the defendant, will recover the land, and he can afterwards make his entry inure to the benefit of his grantee. A rule which thus reaches the very right of the case cannot be opposed to the policy of the law.(w)

So, coming back to the phase of the question we are considering, it would be equally absurd to hold that the plaintiff, by reason of having attempted, contrary to law, and by an agreement which has no validity in law, to convey a part of the subject of the suit to his attorney, has not only not succeeded in conveying it to his attorney, but has released it to the defendant.

§ 5. EFFECT OF THE LAW OF PLACE. In the foregoing opinion the learned judge intimates that he follows the ruling of the supreme court of Missouri,(a) which holds that the common law relating to the subject of champerty is in force in this state. This, of course, is the correct view, as applicable to any case where the validity of such a contract is properly drawn in question in a judicial proceeding. In such case a federal court, sitting in a particular state, would, if the champertous contract were to be performed in that state, in determining its validity, look to the law of that state as interpreted by its highest court, just as the courts of a sister state, or of a foreign country, would, if the validity of the same contract were drawn in question there. But where the validity of the contract is drawn in question collaterally, as in this case, I doubt whether a federal court is under any obligation to look to the decisions of the state courts as its rule of decision in the particular case. Suppose, for instance, that the supreme court of Missouri had held with the supreme court of Wisconsin,(b) that it is a good defense to an action to show that it is being prosecuted under a champertous bargain between the plaintiff

---

(w) That the courts have placed their conclusion substantially upon the grounds thus stated, will be seen by the language of Parker, C. J., in Brinley v. Whiting, 5 Pick. 348, 358.

(a) Duke v. Harper, 66 Mo. 51.
(b) See Barker v. Barker, 14 Wis. 131

and his attorney, would a federal court sitting in Missouri be bound to decide the same question in the same way? It seems to me, not. I think that the question as thus presented relates rather to the discipline which every court exercises over its own attorneys, than to any rule of local municipal law. I should think, for instance, that a federal court sitting in Tennessee would not be bound, in disregard of the decisions of the supreme court of the United States, already quoted, to dismiss a suit in obedience to the mandate of the Tennessee statute already referred to, upon it appearing that it was being prosecuted in pursuance of a champertous bargain between the plaintiff and his attorney. I do not find any intimation to this effect in the opinions of the federal courts which I have examined and cited above.

Upon the general subject of the effect of the law of place upon champertous bargains, it may be said that there is a presumption that the common law obtains in other states of the American Union, until the contrary, is shown; and a champertous contract made and to be executed in one state, and sued on in a court of another state, will not be enforced, in the absence of proof of the law of the former on the subject.(*c*) On the other hand, a contract made in a foreign country and to be enforced in England, which would be void on the ground of champerty if made in England, is none the less void because, in the country in which it was made, it may have been lawful. In so holding, *Erle*, C. J., said: "The argument that the agreement was valid because made in France, is disposed of by the fact that it was to be performed in England, by an officer of an English court. It was clearly an invalid and illegal agreement. Assuming, therefore, that the agreement was not illegal in the country where it was made, it becomes illegal when sought to be enforced here." *Williams*, J., said: "According to the law of this country, the attorneys and suitors in in Westminster Hall are subject to certain reciprocal duties and entitled to certain reciprocal rights. The client, on the one hand, is entitled to call upon his attorney to pay over to him all moneys which he has received for him; and the attorney, on the other hand, is entitled to hold them subject to his costs. We cannot allow these rights and duties to be overturned by agreements made abroad. This is an attempt to fetter the rules of our law in a manner which we cannot sanction."(*d*) This is but a declaration of the general principle that the validity of such contracts is to be determined by the law of the place of performance, as in the case of other contracts.(*e*)

*St. Louis, Mo.*                                        SEYMOUR D. THOMPSON.

(*c*) Thurston v. Percival, 1 Pick. 415; Elliott v. McClelland, 17 Ala. 216, 210.

(*d*) Grell v. Levy, 16 C. B. (N. S.) 73; S. C. 10 Jur. (N. S.) 210.

(*e*) Richardson v. Rowland, 40 Conn. 565.